466 A.2d 1328

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles CARTER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1983.

Decided Sept. 22, 1983.

434

Marilyn J. Gelb, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler Chief, Appeals Div., Stuart Haimowitz, Asst. Dist. Attys., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

■ Appellant, Charles Carter, appeals directly from the judgment of sentence of ten to twenty years imprisonment imposed by Philadelphia Court of Common Pleas following his conviction by a jury of third degree murder.[1] Appellant argues his trial counsel was ineffective because he did not make an exception when the trial court failed to instruct the jury on the complete statutory definition of voluntary manslaughter.[2] Although the judge instructed the jury on "heat of passion" voluntary manslaughter, it did not instruct on "unreasonable belief" voluntary manslaughter as defined in the Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 2503(b). We now hold a trial court shall charge on this type of voluntary manslaughter only when requested, where that sub-class of the offense of voluntary manslaughter has been made an issue in the case

1. We have jurisdiction of this appeal under Section 2 of the Judicial Code, Act of July 9, 1976, P.L. 536, No. 142, 42 Pa.C.S. § 722(1), effective June 27, 1978. This statute was amended subsequent to appellant's conviction. Appellant was also found guilty and sentenced for aggravated assault, simple assault, and possession of an instrument of crime, generally. He does not appeal here from the judgments of sentence imposed as to those convictions.

2. Appellant also contends the following:
    (1) the verdict was based on insufficient evidence and was against the weight of the evidence;
    (2) he is entitled to a new trial because the prosecutor asked a defense witness if the witness had ever been arrested;
    (3) the trial court erred in refusing to reinstruct the jury on voluntary manslaughter after a juror requested further explanation on "malice";
    (4) he is entitled to a new trial because the prosecutor, in cross-examining appellant, referred to a ballistics report which had never been the subject of suppression litigation because the Commonwealth had previously informed the court that there had been no entry of appellant's residence for the purpose of seizing evidence.
    We have thoroughly reviewed these issues and find them to be without merit. '

and the trial evidence could reasonably support a verdict on it. Because the evidence here could not have reasonably supported a finding of unreasonable belief in the necessity of using deadly force in self-defense, appellant was not entitled to a jury instruction on it. Consequently, his trial counsel was not ineffective for not excepting to the court's failure to charge on it. We therefore affirm Common Pleas' judgment of sentence.

## I.

At trial the Commonwealth presented evidence showing that on December 18, 1975 Mark Rogers, his sister Gail Keene, and their cousin Barbara Holmes, were at their grandmother's home. Keene had been living there approximately two weeks. She had shared a home with appellant but moved into her grandmother's following an argument with appellant during which he struck her with a belt. Early that evening appellant telephoned Keene. Rogers picked up a telephone extension and interrupted the conversation by saying, "I want to talk to you, man." Shortly thereafter Rogers hung up the receiver because he said appellant had hung up on him.

Rogers, followed by Holmes, left their grandmother's home and walked around the corner to appellant's home. Rogers wanted to speak with appellant about his sister and the treatment she had received from appellant. Rogers rang the front door bell and appellant opened the door. Rogers said he wanted to talk but appellant responded by slamming the door. Annoyed at appellant's action, Rogers punched and kicked the door, breaking the glass and cutting his hand.

Finally, Holmes persuaded Rogers to return to their grandmother's home. Enroute, they heard appellant shout, "Get out of the way." Holmes ducked behind a car and Rogers jumped behind a hedge. Although he saw appellant was brandishing a shotgun, Rogers stepped from behind the hedge and said, "You got a gun. Well, shoot me then."

Appellant pulled the trigger. The gun failed to discharge and appellant turned and ran towards his home.

Rogers and Holmes proceeded to their grandmother's house where Rogers' cuts were treated. Approximately fifteen minutes later, Rogers and Holmes decided to leave. As they walked out the front door they were confronted with appellant standing on the porch of the house next door. He had a gun in his hand and was pointing it directly at Holmes. She warned Rogers to duck because "Charles has a gun." Appellant fired at Holmes but the shot missed as Rogers pushed her safely off the porch. Appellant fired at Rogers but that shot also missed its target. Gail Keene then ran out of her grandmother's front door and jumped across the porch rail to the porch next door. She threw her arms around appellant and pleaded "[D]rop the gun, that was her brother, don't shoot him." Appellant ignored her pleas, shot Keene in the chest and as Rogers was approaching his injured sister, appellant fired two more shots. Both struck Rogers. As both victims lay bleeding, appellant walked into the street, turned, and ran away. Keene recovered from her injuries but Rogers died about one month later from infection caused by his gunshot wounds.

Appellant also testified at trial. According to him, he retrieved the shotgun after Rogers had broken the door. He testified he "didn't pull the trigger [of the shotgun] because I was afraid of him. I pulled the trigger because I was that angry." After the gun failed to discharge, appellant stated he retrieved the second firearm and followed Rogers "to see if he was doing any harm to [Gail Keene], and if he was going to pay for my door...." [3]

**3.** Appellant testified Rogers mistakenly believed appellant had caused the latter's welfare payments to be terminated. While at appellant's front door Rogers had threatened that "Both of [them] knew about it, and he was going to break [their] necks." Appellant testified he assumed Rogers was referring to Keene and himself. Robert Stokes, a neighbor of appellant, who testified for the defense, said he also heard Rogers say during the door breaking incident, "I will break your dam (sic) neck. Both of you knew about that."

Appellant testified that as he was approaching Keene's grandmother's house he saw Holmes exit. He heard her shout "He's got a gun." Fearing that Rogers was the subject of the warning, appellant jumped up on the porch of the house next door to protect himself. Appellant thought Rogers was reaching for a weapon and responded by firing a shot but "not directly at him." Keene then came out of the house, jumped over the bannister, and started to wrestle with appellant. Rogers joined the struggle. The gun fired several times striking Rogers and Keene. Keene, who subsequently married appellant, testified similarly to his version of the struggle. Both testified the shootings were accidental.

Following trial by jury appellant was found guilty of murder in the third degree for killing Rogers, aggravated assault for shooting Keene, simple assault for shooting at Holmes, and possession of an instrument of crime, generally. He received terms of imprisonment of ten to twenty years for murder, two and one-half to five years on the weapons charge, two and one-half to five years for aggravated assault and one to two years for simple assault.[4]

## II.

Appellant argues his trial counsel was ineffective for not excepting when the trial court failed to instruct the jury on the complete statutory definition of voluntary manslaughter. Although the trial court charged the jury on the traditional definition of voluntary manslaughter, namely, a "heat of passion" killing, 18 Pa.C.S. § 2503(a), the court did not instruct on the "unreasonable belief killing justifiable" voluntary manslaughter defined in the Crimes Code. 18 Pa.C.S. § 2503(b).[5] According to that definition, a killing

4. The latter two sentences were to be concurrent with the third degree murder sentence.

5. The Crimes Code defines voluntary manslaughter as:
(a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the

perpetrated under an unreasonable belief that it is justified reduces the crime from murder to manslaughter.

Appellant argues that "whatever the nature of the evidence" a defendant charged with murder "has an unconditional right on request to an instruction on the complete statutory definition of the offense of voluntary manslaughter." *Commonwealth v. Manning*, 477 Pa. 495, 499, 384 A.2d 1197, 1199 (1978). In *Manning* we reasoned that right was a necessary extension of *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974).[6] In *Jones* we addressed a killing under the 1939 Penal Code.

The 1939 Penal Statute and those statutes preceding it did not attempt to define the crimes of murder and voluntary manslaughter, but rather incorporated the concepts of the common law. . . . Part of our common law heritage in this regard was the principle that the jury always has the power under a murder indictment to return a verdict of voluntary manslaughter although the classical requirements of voluntary manslaughter were absent. . . . . This principle was a corollary to the rule that upon an indictment for a particular crime, the defendant may be convicted of a lesser offense included within it.

killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed; or
(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
(b) Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.
18 Pa.C.S. § 2503.

**6.** All six participating Justices in *Jones* agreed the voluntary manslaughter instruction must be given in all murder prosecutions upon request. However, the Court was equally divided on the reason for that requirement. Three Justices based their conclusion upon the Court's supervisory power while three other Justices rested their decision on constitutional grounds.

*Commonwealth v. Manning, supra,* 477 Pa. at 501, 384 A.2d at 1200 (dissenting opinion of Nix, J.) (citations omitted) (footnote omitted).

As noted by Mr. Justice Nix, the purpose of the common law rule that a jury considering an indictment for murder may find a verdict of voluntary manslaughter was two-fold:

> First, it was intended to prevent the prosecution from failing where some element of the crime of murder was not made. Second, it was designed to redound to the benefit of the defendant, since its effect is actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence.

*Commonwealth v. Jones, supra,* 457 Pa. at 569, 319 A.2d at 146 (footnotes omitted).

Because of those common law concepts and to obtain "consistency", Mr. Justice Nix, the author of the Opinion in Support of Affirmance in *Jones,* stated, "a defendant under indictment of murder will be entitled, *upon request,* to have the jury advised of its power to return a verdict of voluntary manslaughter." *Id.,* 457 Pa. at 573–574, 319 A.2d at 148 (emphasis in original). As stated previously, *Jones* was decided pursuant to the 1939 Penal Code. Dissenting in *Manning,* Mr. Justice Nix observed the *Manning* killing was governed by the 1972 Crimes Code. The Code defines voluntary manslaughter as including not only traditional common law "heat of passion" killings but also those killings committed under unreasonable belief that the circumstances justify the act. By viewing *Jones* as mandating a like result in *Manning* we overlooked not only the change in our statutory law but also the salutary rule that "a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *Commonwealth v. White,* 490 Pa. 179, 182, 415 A.2d 399, 400 (1980).[7] *See also,*

---

**7.** In *White* we decided that in a murder prosecution an involuntary manslaughter charge shall be given only when the trial evidence reasonably would support that verdict. We also stated that in non-homicide prosecutions "it is generally held that a trial court is not obliged to grant a request for an instruction on a lesser-included

*United States ex rel. Matthews v. Johnson,* 503 F.2d 339, 351–352 (3d Cir.1979) (dissenting opinion of Circuit Judge Kalodner), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975); *United States v. Dougherty,* 473 F.2d 1113, 1133 (D.C.Cir.1972) ("The jury's role was respected as significant. . . , but it was not to be given instructions that articulated a right to do whatever it willed").

The rationale behind the *Jones* decision mandating a voluntary manslaughter charge upon request has no application under Section 2503(b) of the Crimes Code. Here the trial judge did instruct the jury on Section 2503(a), the common law "heat of passion" killing.[8] Consequently, the jury could have exercised its mercy dispensing power by finding appellant guilty of "heat of passion" voluntary manslaughter. However, the jury chose not to exercise its mercy dispensing power beyond finding appellant guilty of third degree murder. Each type of voluntary manslaughter is the same grade of offense. There is no reason to believe the jury would have exercised its mercy function by returning a verdict of voluntary manslaughter based on the second type of offense which was not supported by the facts.[9]

> offense unless there is support for such an instruction in the evidence." *Id.,* 490 Pa. at 182–183, 415 A.2d at 400.

8. Because of this we need not decide the propriety of charging a jury on heat of passion voluntary manslaughter in the absence of evidence to support the offense. *See Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) (plurality opinion) (statutory system which requires that the jury in every first-degree murder case be instructed on second-degree murder and manslaughter even if there is not a scintilla of evidence to support a lesser verdict invited jurors to disregard their oaths and act capriciously); *Hopper v. Evans,* 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367, 373 (1982) (suggesting an instruction on a lesser offense would be impermissible "absent evidence supporting a conviction of a lesser offense" and that "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction"); *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 72–73, 454 A.2d 937, 966–967 (1982).

9. What Mr. Justice Nix said in *Jones* is arguably applicable here. In *Jones* the defendant was not prejudiced by the trial court's refusal to charge on voluntary manslaughter because the jury, although in-

Second, the vitality of the rationale that an instruction on the lesser-included offense must always be given regardless of the evidence in support of the offense is disputable. *See, n. 8, supra.*

Under Section 2503(b) a homicide is reduced from murder to voluntary manslaughter if the defendant subjectively believed circumstances justifying the killing existed, but objective reality negates that existence. Logically, the defendant's belief, sincere though unreasonable, negates malice. However, here the prosecutor sought to prove a premeditated killing. Appellant defended by attempting to show that the firearm accidentally discharged during a struggle among himself, Keene, and Rogers. This testimony has no rational link to the 2503(b) theory of imperfect self-defense. Even if credited it would not establish a knowing or intentional killing committed out of an "unreasonable belief" in the necessity of self-defense. Instead, it establishes an unintentional killing classified by the Crimes Code as involuntary manslaughter. *Commonwealth v. Ford,* 474 Pa. 480, 378 A.2d 1215 (1977).

Simply because unreasonable belief voluntary manslaughter sometimes may arguably be a lesser-included offense of murder is not a valid reason upon which to base a requirement that a trial judge must instruct a jury on an offense

structed on second degree murder, elected not to return a verdict on that lesser alternative.

> It is clear in this case that appellant did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of ["heat of passion" voluntary manslaughter]. There is not the slightest reason to believe that the jury would have returned [that] verdict ... out of sympathy or in recognition of factors that they may have deemed mitigating where these factors were not sufficiently compelling to cause them to elect the lesser alternative that was offered.

*Commonwealth v. Jones,* 457 Pa. 563, 574, 319 A.2d 142, 148 (1970) (footnote omitted).

This rationale is even more compelling here where the "unreasonable belief" issue was not present and the jury, having been instructed on "heat of passion" voluntary manslaughter, refused to return a verdict based on mitigating factors which were arguably present in the evidence and would have supported the latter type of offense. *But see United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3d Cir.1974).

extraneous to the proof at trial.[10] Such requirement only serves to confuse juries and invite them to base their verdicts on whim and caprice. Whatever the merits, or current vitality of the theory that due process requires an instruction on common law voluntary manslaughter in every murder case, we see no reason to extend that theory to require instruction on imperfect self-defense where there is no evidence to support it. Further, invitations to jury confusion or irrationality are unnecessary. Such invitations would be offered here if the jury had been instructed on "unreasonable belief" voluntary manslaughter when the proof at trial did not rationally support a verdict on it.

We hold the "unreasonable belief" manslaughter charge shall be given only when requested, where the offense has been made an issue in the case, and the trial evidence reasonably would support such a verdict.[11] *See Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980) (involuntary manslaughter); *Commonwealth v. Williams,* 490 Pa. 187, 415 A.2d 403 (1980) (involuntary manslaughter). To the extent that *Commonwealth v. Manning, supra,* indicates otherwise it is overruled. The jury's discretion is better channeled under the rule set forth here to rational

**10.** *See Commonwealth v. Manning, supra,* 477 Pa. at 503, 384 A.2d at 1201 (dissenting opinion of Nix, J.) ("lesser included offense approach ... is only compelling ... where there exists a factual dispute as to the presence or absence of an element of the greater offense, which element is *not* a component part of the lesser offense") (citation omitted).

**11.** By conditioning the giving of the charge upon the requirement that the trial evidence must reasonably support such a verdict, we eliminate the problem found offensive by the Third Circuit of exposing "a defendant to the idiosyncracies of the trial judge" in deciding whether or not to so charge. *United States ex rel. Matthews v. Johnson,* 503 F.2d 339 (3rd Cir.1974). (To satisfy due process a trial court must charge on voluntary manslaughter upon request in all murder cases regardless of the evidence). Pennsylvania's adoption of the standard that the trial evidence must reasonably support the verdict of common law "heat of passion" voluntary manslaughter before an instruction would be given on it might well have met the due process objections of the majority in *Matthews. See also,* n. 8, *supra.*

deliberation and decision of whether a defendant is guilty of a crime supported by the evidence.

Under the evidence "unreasonable belief" voluntary manslaughter was not an issue here. Therefore appellant was not entitled to a charge on it and his trial counsel was not ineffective in failing to except to the judge's charge on this ground. *See Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

Judgment of sentence affirmed.

ROBERTS, C.J., files a concurring opinion.

LARSEN, J., joins in this opinion and files a concurring opinion in which McDERMOTT, J., joins.

McDERMOTT, J., joins in this opinion and files a concurring opinion.

ROBERTS, Chief Justice, concurring.

This record is clear that trial counsel deliberately chose not to request an instruction on unreasonable-belief voluntary manslaughter because his client had testified that the victim had been shot accidentally. Counsel's course of action, therefore, had a "reasonable basis designed to effectuate his client's interests," *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967), and counsel did not provide ineffective assistance. See *Commonwealth v. DeBose,* 501 Pa. 399, 461 A.2d 797 (1983); *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972).

Because counsel deliberately chose not to request an instruction on unreasonable-belief voluntary manslaughter, the record provides no basis for the majority to decide whether an instruction should have been given if it had been requested, let alone to overrule *Commonwealth v. Manning,* 477 Pa. 495, 384 A.2d 1197, a 1978 decision of this Court interpreting Section 2503 of the Crimes Code, which remains the same today.

Accordingly, I concur only in the result.

LARSEN, Justice, concurring.

I join in the opinion of the majority. However, I would go further than the majority and hold that *all* manslaughter charges "shall be given only when requested, where the offense has been made an issue in the case, and the trial evidence reasonably would support such a verdict." The rule that a trial court should instruct the jury only on legal principles which apply to the facts presented at trial so that the jury may render a true and correct verdict should apply with equal force to all types of manslaughter. *Cf. Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980) (rule applied to instruction on involuntary manslaughter); *Commonwealth v. Williams,* 490 Pa. 187, 415 A.2d 403 (1980) (rule applied to instruction on involuntary manslaughter).

McDERMOTT, J., joins this concurring opinion.

McDERMOTT, Justice, concurring.

Whatever the merit of the decision in *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142, cert. denied, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), I believe that this Court erred when it extended the *Jones* holding to cases arising under the Crimes Code of 1972: a view shared by Mr. Justice Nix, the author of the *Jones* Opinion in Support of Affirmance, who vigorously dissented in *Commonwealth v. Manning,* 477 Pa. 495, 500, 384 A.2d 1197, 1200 (1978).

One of the obvious purposes of the Crimes Code was to separately define individual offenses and to codify the body of law which had developed prior to its adoption. In *Manning, id.* this Court undid all of that work as it related to the varying degrees of homicide.

In addition, I have always viewed as paradoxical the rationale behind the giving of instructions on all aspects of homicide regardless of the offense charged. Purportedly the giving of such instructions "was intended to prevent the prosecution from failing where some element of the crime of murder was not made, ... [and] ... it was designed to redound to the benefit of the defendant since its effect is

actually to empower the jury to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence. *See, Commonwealth v. Jones, supra,* 457 Pa. at 569, 319 A.2d at 146.

It seems to me that both aspects of this rationale, extracted from anachronisms of the common law, defeat and confuse the purposes of a codified modern criminal code.

They relieve the Commonwealth of establishing their full burden of proof. If the Commonwealth charges murder, they should be obliged to prove all the elements or fail of their charge. The jury ought not be invited to compromise a defendant into a lesser charge of homicide because they are doubtful of the proofs. Both the Commonwealth and defendant are entitled to the charge proved, or nothing. To say that the jury may show "mercy" by reducing murder to voluntary manslaughter is a watery "mercy" if it results from an available compromise of the truth of the occasion.

It is always a small "mercy" to be convicted of a crime when one is innocent of any. Certainly the Commonwealth should not, as a gift from the jury, receive the "mercy" of a victim of compromise.

At all events, the "mercy" should be mercy for something, and not a compromise of the evidence or the proofs.

"Mercy" is not a factor to be considered. "Mercy" is a quality that strains the truth determining process. It overlooks, it forgets, it forgives, it has its place, but certainly not in the determination of facts.

Hence, while I applaud the step taken by the majority, I would go the next logical step and extend our holding here to all types of manslaughter.

A defendant who a jury is persuaded is guilty of murder in the first degree or third degree, may wish to show mercy, but it should be called "mercy" and not voluntary manslaughter.

For these reasons I join in the opinion of the majority in overruling *Commonwealth v. Manning, supra;* and in the

opinion of Mr. Justice Larsen that the rule we announce today be extended to all types of manslaughter.