523 A.2d 357

COMMONWEALTH of Pennsylvania, Appellee,

v.

Ronald MAYS, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Jeffrey L. BLAND, Appellant.

Superior Court of Pennsylvania.

Argued and Submitted Nov. 20, 1986.

Filed March 23, 1987.

F. Emmett Fitzpatrick, Jr., Philadelphia, for Mays, appellant in No. 1076.

Edmund E. DePaul, Philadelphia, for Bland, appellant in No. 1162.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee in No. 1162.

Maxine Stotland, Philadelphia, for Com., appellee in No. 1076.

Before CAVANAUGH, OLSZEWSKI, and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from judgments of sentence imposed after appellants Mays and Bland were convicted of second degree murder, robbery, and conspiracy. Appellant Mays presents several issues for our review: (1) whether the incriminatory statements of his co-defendant were properly admitted; (2) whether it was proper to introduce evidence of his post-arrest silence; and, (3) whether the court erred in refusing to discharge the jury after they admitted they were deadlocked. Appellant Bland claims his trial was commenced in violation of Pa.R.Crim.P. 1100. Both appellants claim the court erred in declining to charge the jury on the offense of voluntary manslaughter. We find that nei-

ther appellant has established an entitlement to relief; accordingly, the judgments of sentence are affirmed.

On February 17, 1984, appellants entered the decedent's apartment in Philadelphia and demanded that the victim "give up the stuff." When the victim denied having any "stuff," Mays kicked him in the chest while Bland, holding a gun, threatened to kill the victim if he moved. After a continued struggle, Bland kicked the victim and Mays directed Bland to "just kill him." Bland then shot the victim and both men fled. Mays and Bland were arrested on February 20, 1984. Following their convictions, post-verdict motions were denied and appellants were sentenced to mandatory terms of life imprisonment for murder in the second degree. In addition, Mays was given a concurrent term of two and one-half to five years for conspiracy and Bland received a term of two and one-half to five years for possession of an instrument of crime and conspiracy.

■ Appellant Mays first challenges the admission of co-defendant Bland's incriminating statements. We decline to address the merits of this issue as appellant Mays has not preserved it in his written post-trial motions. *See Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979) (only those issues included in written post-verdict motions are preserved for appeal).

Appellant Mays next contends that the court improperly allowed the Commonwealth to introduce evidence of his post-arrest silence.[1] The Commonwealth had called a rebuttal witness, Sgt. Joseph Leonardo of the Reading Police Department, who testified that he had taken both appellant and his co-defendant into custody. The officer also testified that appellant refused to give a statement after being advised of his *Miranda* rights. (R.R. 346a, N.T. 609). Immediately following the officer's remarks, the prosecutor requested a sidebar conference to explain that the witness

1. Although appellant Mays purports to challenge the admissibility of the statement regarding his post-arrest silence, the claim of error is more properly before this Court as a challenge to the denial of appellant's motion for a mistrial.

had stated prior to trial and in the presence of two other officers, that appellant had expressed a willingness to give a post-*Miranda* statement. (R.R. 346a–353a, N.T. 609–616). The prosecutor expressed surprise at the officer's remark, noting that it was inconsistent with his prior statements, and stressed that she wished to downplay the incident in front of the jury. (R.R. 347a, 352a, N.T. 610, 615). The court excused the panel, and counsel examined a witness who was present when the prosecutor interviewed Sgt. Leonardo. Contrary to Sgt. Leonardo's testimony, the witness testified that appellant indicated a desire to make a post-arrest statement. (N.T. 620). Immediately thereafter, the Commonwealth withdrew the first officer as a witness and the court struck his testimony from the record. *Id.* The court then issued the following instruction to the jury:

> Based upon the motion, you are to completely disregard whatever that witness stated on the witness stand as to who the witness believed on the stand because the Commonwealth is withdrawing that witness from your consideration.

(N.T. 620–621).

 Appellant argues that his constitutional rights were violated by the officer's reference to his post-arrest silence. Appellant is correct insofar as he claims that a reference at trial to an accused's post-arrest silence is a constitutional violation. *See Commonwealth v. Gbur*, 327 Pa.Super. 18, 24, 474 A.2d 1151, 1154 (1984), *citing Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1986) *and Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978). As this Court noted in *Gbur*, "(n)ot every reference, however, requires a new trial. Prompt and adequate cautionary instructions can cure what might otherwise be reversible error." *Gbur*, 327 Pa.Super. at 24, 474 A.2d at 1154. A four-factor test is used to determine whether cautionary instructions have cured such an error: "1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the caution-

ary instruction." *Id.* (citations omitted). Using the four-factor test of *Gbur*, we find that the officer's statement here referring to appellant's silence was so cured.

First, we note that the officer made a direct reference to appellant's unwillingness to give a statement. We recognize that such a reference was prejudicial. *See Gbur*, 327 Pa.Super. at 23, 474 A.2d at 1154 (testimony by officer that defendant did not want to talk was prejudicial). In assuming the degree of prejudice, we note, however, that the Commonwealth withdrew the officer as a witness and his testimony was stricken from the record. (N.T. 620).

Second, the reference to appellant's silence was totally unexpected and inadvertent. The officer was called to testify that appellant and the co-defendant were taken into custody on February 20, 1984. The prosecutor merely questioned the officer's actions in arresting appellant when the officer stated that appellant was unwilling to give a statement. (N.T. 609). We do not view such a statement, which seems to have been added as an afterthought to complete a prior response, as intentionally elicited.

Third, the prosecutor's conduct reinforces our determination that the effect of this statement was minimal. Immediately after the officer made the reference to appellant's silence, the Commonwealth requested a sidebar conference. The prosecutor explained to the court that the officer had informed her prior to trial and in the presence of two witnesses, that appellant was willing to make a statement. The prosecutor stressed that the officer's testimony at trial was unexpected and not deliberately elicited by the Commonwealth. (R.R. 346a–347a). The prosecutor's representations as to the officer's pre-trial statements was corroborated by the in-camera testimony of the witnessing detective who stated that at the pre-trial interview with the prosecutor, appellant Mays indicated he understood his rights and was willing to make a statement. (N.T. 619–620). Given this corroborative testimony, we cannot conclude that the prosecutor intended to elicit the prejudicial remark.

Finally, we note that the prosecutor made no attempt to exploit the situation. Rather, the Commonwealth moved promptly to have the jury recessed and to cure the prejudicial effect of the statement. Indeed, even though the court stated its intention to issue a curative instruction, the Commonwealth withdrew its witness. Promptly thereafter, the court instructed the jury to "completely disregard the testimony of the officer." (N.T. 620–621). In giving such a blanket instruction shortly after the reference, and in carefully refraining from mentioning appellant's right to remain silent, the court effectively precluded any further prejudice to appellant.

In short, we believe the inadvertent reference to appellant's silence, although prejudicial, was promptly and adequately cured by the withdrawal of the witness and an instruction to totally disregard the officer's entire testimony.

[4] Appellants Mays and Bland next contend that the court erred in refusing to charge the jury on voluntary manslaughter.[2] In regard to appellant Mays,[3] we agree

2. **Sec. 2503. Voluntary manslaughter**
 **(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
 (1) the individual killed; or
 (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
 **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.
 **(c) Grading.**—Voluntary manslaughter is a felony of the second degree.
 18 Pa.Cons.Stat.Ann. Sec. 2503 (Purdon's 1983). In short, the crime of voluntary manslaughter is defined in two ways. Section 2503(a) defines the traditional voluntary manslaughter, a "heat of passion" killing, while Section 2503(b) provides for an "unreasonable belief" voluntary manslaughter.

3. Appellant's proposed jury instructions were not made part of the record. We are, thus, unable to discern whether the requested charge

with the trial court that on the facts of this case, a charge on "heat of passion" voluntary manslaughter was not warranted. Mays' theory of the case was that he and a friend visited the decedent on February 17, and then drove out of the city. In short, appellant claimed he had nothing to do with the murder. The Commonwealth presented an eyewitness who stated that Mays and Bland entered the decedent's apartment and demanded that the latter "give up the stuff." When the decedent denied having anything, Mays punched him while appellant Bland threatened to kill the eyewitness. When the decedent moved his hand toward his pocket, someone shouted that the decedent had a "piece." The decedent protested that he had no weapon. After kicking the decedent, Mays told Bland to "just kill him." Bland then shot the victim and both defendants ran from the building.

We fail to see how appellant Mays' attack on the victim was brought about by serious provocation or such emotion as to render his mind incapable of reason. *See generally Commonwealth v. Galloway*, 336 Pa.Super. 225, 238–239, 485 A.2d 776, 783 (1984) (defining a "heat of passion" killing). There is simply no evidence on the record which triggers a question of "heat of passion" voluntary manslaughter.

was based upon Section 2503(a) or (b). We note, however, that in excepting to the charges, appellant argued as follows:

(Counsel for appellant): And I ask for a voluntary manslaughter charge as well as we indicated to the Court that there was some evidence in the testimony of the statement that he was scared and that there was a fight and that this inference was perhaps of voluntary manslaughter should be. *There is a self-defense here and I think the Court has to have, should have given a charge on voluntary manslaughter, that he may have been unreasonable to think it was self-defense,* but he may argue and His Honor, you don't have the manslaughter *and there is a requirement to murder one, two and three.*

(N.T. 740) (emphasis added). Appellant's argument in post-verdict motions was to the same effect. (N.T. 4/8/85 14–17). Although appellant's arguments are less than exemplary, we believe his argument was, nevertheless, adequate to preserve a claim of error based upon Sections 2503(a) and (b).

Despite the absence of evidence that the killing occurred as a result of "heat of passion," case law compels us to examine the merits of appellant May's claim. In *Commonwealth v. Jones*, 457 Pa. 563, 573–574, 319 A.2d 142, 148, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974), our Supreme Court held that "a defendant under indictment of murder will be entitled, *upon request*, to have the jury advised of its power to return a verdict of voluntary manslaughter." (emphasis in original). Although *Jones* was based upon a killing under the Penal Code of 1939, the rule of that case was extended to cover a murder brought under the Crimes Code of 1972, thus giving a defendant charged with murder the unconditional right to request an instruction on voluntary manslaughter under Section 2503(b). *Commonwealth v. Manning*, 477 Pa. 495, 384 A.2d 1197 (1978). Upon reflection, the Supreme Court overruled *Manning* in *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983), finding that the rule of *Jones* had no application under Section 2503(b), the "unreasonable killing" voluntary manslaughter. However, because the trial court in *Carter* instructed the jury as to a Section 2503(a), "heat of passion killing," the Court did not determine whether a charge on Section 2503(a) need be given pursuant to that provision. *Id.*, 502 Pa. at 441, 466 A.2d at 1331 n. 8. Hence, because *Carter* overruled *Manning* and, in turn, *Jones*, only as to the issuance of an instruction on Section 2503(b), we are obligated to apply the rule of *Jones* where a request for a "heat of passion" instruction has been made.[4]

**4.** Despite the erosion of *Jones, see generally, Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983) and *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *rehearing denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). We are constrained to follow its mandate until such time as the Supreme Court considers whether a Section 2503(a) instruction need be given in the absence of evidence to support such an offense. *See also, Commonwealth v. Terry*, 513 Pa. 381, 401, 521 A.2d 398, 408 (1987) (while noting that evidence was insufficient to warrant jury charge on 18 Pa.Cons.Stat.Ann.Sec. 2503(b), Court summarily concluded circumstances were insufficient to put defendant into a "killing rage").

██ The remnants of *Jones* lead us to the conclusion that, upon request, and despite the absence of evidence to the contrary, the jury must be charged on "heat of passion" voluntary manslaughter. This the trial court failed to do. Such an error does not, however, mandate the grant of a new trial. In *Jones*, three Justices of our Supreme Court stated:

> It is clear in this case that appellant did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of second degree. There is not the slightest reason to believe that the jury would have returned a verdict of voluntary manslaughter out of sympathy or in recognition of factors that they may have deemed mitigating where these factors were not sufficiently compelling to cause them to elect the lesser alternative that was offered.

*Id.*, 457 Pa. at 574, 319 A.2d at 148 (footnote omitted). In the present case, the trial court instructed on first, second and third degree murder. The jury could have exercised a mercy-dispensing power and brought back a verdict of third-degree murder against Mays. Instead, the jury found Mays guilty of second-degree murder. We are therefore persuaded that Mays suffered no prejudice from the trial court's denial of a request for charge on Section 2503(a), "heat of passion" voluntary manslaughter.[5]

Nor are we persuaded that the court erred in refusing to charge on Section 2503(b), "unreasonable belief" voluntary manslaughter. The Supreme Court has held that such a charge shall be given only where: (1) the offense has been made an issue in the case; (2) the evidence would reasonably support such a verdict; and (3) where such a charge is specifically requested. *Commonwealth v. Carter*, 502 Pa. 433, 444, 466 A.2d 1328, 1333 (1983).

---

**5.** We also reject appellant's argument that his due process rights were violated by the failure to instruct the jury on voluntary manslaughter. Any notion that the rule of *Jones* had constitutional underpinnings has been laid to rest. *See Commonwealth v. Zettlemoyer, supra,* note 4.

■ After reviewing the record, we find no evidence to support an "unreasonable belief" manslaughter charge as to appellant Mays. As we noted before, according to appellant's theory of the case, he and a friend left the city and, thus, he had nothing to do with the murder.[6] Moreover, the evidence presented at trial supports the Commonwealth's theory that the killing took place during the course of a robbery. According to the record, the decedent was confronted and kicked by the appellants who demanded that the decedent "give up the stuff." A struggle ensued during which time one of the defendants shouted that the victim had a weapon as the decedent went to reach into his right pocket. Appellant Bland then kicked the victim again and, when ordered by Mays to kill the victim, Bland did so. We fail to see how evidence that Mays and Bland were robbing the decedent could reasonably support appellant's claim of an imperfect self-defense. Thus, we find no error in the trial court's refusal to charge the jury on Section 2503(b) voluntary manslaughter.

Nor do we find error in the court's refusal to instruct the jury on "unreasonable belief" voluntary manslaughter as to appellant Bland.[7] In a written statement made by Bland while in custody,[8] he claimed:

> (Decedent) owed me $200 because I was selling drugs for him. Me and Blank [9] (sic) went around to his apartment that night and asked when could I get my money. He had owed it to me for two weeks. He told me to hold up for a couple more days. Then we got into an argu-

6. We do not imply that appellant had the burden of presenting a defense to the charges. We set forth appellant's argument only to note that there was no evidence on record to support an "unreasonable belief" instruction.

7. Appellant Bland makes clear that he is only challenging the court's refusal to issue a Section 2503(b) "unreasonable belief" charge.

8. Bland's statement was introduced into evidence by the Commonwealth. (N.T. 440–445). The jury was instructed that this statement was to be received only as against Bland, (N.T. 439), and, thus, cannot be considered as against appellant Mays.

9. The statement was redacted.

ment. Then we got to throwing a couple of blows and that's when he started reaching for his gun.

He kept the gun in his back behind him. When he reached back for it, I grabbed his wrist and we started tussling and it went off.

First, I shot him in the stomach and he fell down. Then I just kept shooting as I was reaching for the door because he wouldn't let me out. Then I ran out the door, that's when we left for Reading. It was a matter of self-defense.

(N.T. 441–442, R.R. 200a–201a) (footnote added).

■ We fail to see how the evidence could reasonably support a verdict of voluntary manslaughter. First, both the statement of Bland and the testimony of the Commonwealth's eyewitness indicate that appellant went to the decedent's apartment in order to get money and that an argument ensued over the money. The testimony of the medical examiner regarding the decedent's injuries was consistent with that of the eyewitness's account of the events. (N.T. 364). As noted above, this evidence supports the jury's verdict of robbery and second-degree murder, not a self-defense claim.

■ Second, appellant's statement while in custody does not necessarily put "unreasonable belief" manslaughter in issue. According to that statement the gun "went off" during the struggle. A claim that a weapon accidentally discharged during a struggle is, however, insufficient to support a theory of imperfect self-defense. *Carter*, 502 Pa. at 442, 466 A.2d at 1332. Thus, because the evidence supports a finding of robbery and because appellant's statement does not put self-defense in issue, appellant was not entitled to a charge on Section 2503(b).

■ Appellant Mays' final contention challenges the court's refusal to grant a mistrial after the jury admitted it was deadlocked. We have carefully reviewed the record, the case law and appellant's argument and, for the reasons

given by the trial court, are satisfied the court did not err in refusing to grant a mistrial.

Finally, appellant Bland asserts that his trial was commenced beyond the 180 day mandate of Pa.R.Crim.P. 1100. We decline to address the merits of this claim as appellant has failed to preserve the issue in a post-verdict motion. *See Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979) (only those issues included in written post-verdict motions preserved for appeal).

Judgments of sentence affirmed.