J-S63045-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | : | |
| v. | : | |
| GARY HARRIS, | : | |
| Appellant | : | No. 65 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 19, 2018
in the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000195-2018

BEFORE:   GANTMAN, P.J.E., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:          **FILED JANUARY 31, 2020**

Gary Harris (Appellant) appeals from the December 19, 2018 judgment of sentence entered after a jury found him guilty of possession of a firearm, possession of a firearm with an altered serial number, and possession with intent to deliver (PWID) cocaine. Upon review, we affirm.

We provide the following background.  In September 2017, Officer Timothy Garron of the City of Chester Police Department was called to Clover Lane in the City of Chester to aid in the investigation of a suspicious black sedan.  Police discovered "packaged cocaine for street sales," "a

---

[*] Retired Senior Judge assigned to the Superior Court.

loaded firearm," and identification for Appellant in the vehicle. N.T., 10/11/2018,[1] at 62.

Subsequently, Officer Garron learned through a confidential informant that a person known as "D"[2] was utilizing 1217 Clover Lane to sell narcotics. Officer Garron began surveilling that block. Around 1217 Clover Lane, Officer Garron saw "foot and vehicular traffic" consistent with drug activity, and "a gentleman matching the description of [Appellant] exiting the house and meeting with … buyers." *Id*. at 70-71. Officer Garron identified D as Appellant. *Id*. at 73. This house became a target of the investigation, and police conducted both undercover and controlled buys, as well as additional surveillance, in order to obtain a search warrant. In addition, a Pontiac Bonneville registered to Appellant was seen in this area.

A search warrant was obtained for 1217 Clover Lane. A team of officers executed the warrant on December 5, 2017. Upon entering the residence, Officer John Benozich saw Appellant, who then ran up the stairs. Officer Benozich chased Appellant up the stairs and into a bedroom where Danielle Jones and four children under the age of four were located. Officer Benozich saw Appellant throw two items. *Id*. at 197. Those items were

---

[1] In the certified record, this transcript has a date of November 11, 2018. However, it is evident this transcript is from October 11, 2018, and we will use that date throughout this memorandum.

[2] D was described as a skinny black male, between 5'10" and 6'0" tall, with a beard.

later identified as baggies with bulk crack cocaine. *Id*. at 197. Meanwhile, upon entering the residence, Officer Garron "went to the left and was met by Quashay" Jones. *Id*. Officer Garron detained Quashay Jones for the officer's safety.

Shortly thereafter, Donte Harris entered the residence inquiring about the children.[3] He was also detained and handcuffed.[4] After all four adults were detained, they were given their *Miranda*[5] warnings. *Id*. at 86-87.

During the search of the house, police found "six grams of crack cocaine packaging," Appellant's cell phone, and "his AC[C]ESS card or debit card." *Id*. at 95. On top of a kitchen cabinet, police found a "Glock 19 with an extended magazine that contained 32 live rounds of ammunition." *Id*. In the basement, there were three digital scales and "another 9 millimeter firearm with an obliterated serial number." *Id*. As a result of this search, Officer Garron arrested Appellant. Police did not arrest Donte Harris, Quashay Jones, or Danielle Jones in connection with this search.

---

[3] Officer Garron described Donte Harris as being 5'6" to 5'8" tall with dreadlocks and no facial hair. N.T., 10/11/2018, at 87.

[4] Throughout the case, it was Appellant's position that "D" was actually Donte Harris, not Appellant. Thus, it was Appellant's argument to the jury that police should have arrested and charged Donte Harris with these crimes. *See* N.T., 10/11/2018, at 40-46 (Appellant's opening statement); N.T., 10/12/2018, at 14-18 (Appellant's closing argument).

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On February 7, 2018, a criminal information was filed against Appellant, charging him with the aforementioned crimes, based upon the items found pursuant to the search warrant. A jury trial occurred from October 10-12, 2018. On October 12, 2018, the jury found Appellant guilty of the aforementioned charges. On December 19, 2018, the trial court sentenced Appellant to an aggregate term of 96 to 192 months of incarceration. Appellant did not file a post-sentence motion, and he filed a timely notice of appeal on December 31, 2018. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant challenges several evidentiary rulings by the trial court, which we consider mindful of the following.

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Akrie*, 159 A.3d 982, 986-87 (Pa. Super. 2017) (citing *Commonwealth v. Ivy*, 146 A.3d 241, 250 (Pa. Super. 2016)).

We begin with Appellant's contentions related to the trial court's ruling on Appellant's written motion *in limine*. *See* Appellant's Brief at 16-18. In doing so, we point out that "[w]hen ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Hutchison*, 164 A.3d 494, 500 (Pa. Super. 2017).

By way of background, on September 22, 2018, Appellant filed a motion *in limine* on two bases. First, Appellant requested the trial court prohibit the Commonwealth from introducing evidence that other "individuals in the home were screaming in the direction of [Appellant]" after all four adults were detained. Motion *In Limine*, 9/22/2018, at ¶ 4 (internal quotation marks omitted). Second, Appellant requested the trial court prohibit "statements from an individual identified as Donte Harris." *Id*. at ¶ 7.

The trial court considered this motion immediately prior to trial on October 11, 2018. At that time Appellant argued that "anything [the other individuals were] screaming at [Appellant] … is hearsay." N.T., 10/11/2018, at 6. The trial court stated that police may testify that these individuals were screaming, but it was unclear as to what exactly "the officer will say as to what he can identify he actually heard." *Id*. at 11. The trial court pointed out that any actual words "may or may not be admissible." *Id*. Thus, the trial court reserved judgment on this portion of the motion. *Id*. Appellant also argued that the trial court should not permit police officers to testify that Donte Harris said, "I don't live here" when he entered the house. *Id*. The trial court denied that portion of the motion. *Id*. at 10.

During trial, the Commonwealth asked Officer Benozich how the "other two females" reacted to their being detained. Id. at 210. Officer Benozich responded that "[t]hey were very emotional about items being located in the

house and immediately started directing, screaming and yelling at the direction of [Appellant]." *Id*. at 211. Appellant did not renew his objection at that time.

On appeal, Appellant contends "this testimony should have been stricken." Appellant's Brief at 18. Despite the fact the trial court specifically deferred its ruling on this portion of the motion *in limine*, Appellant neither objected to this testimony nor asked for this testimony to be stricken. Thus, even if this statement were objectionable, Appellant has waived any challenge to this testimony by failing to object. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003) (stating that a party must make a timely and specific objection to preserve an issue for appellate review). Accordingly, Appellant is not entitled to relief on this issue.

With respect to Donte Harris's statement, at trial, Officer Garron testified that immediately upon entering the 1217 Clover Lane, Donte Harris exclaimed, "I don't … even live here." N.T., 10/11/2018, at 88. Even though the trial court had just **denied** this portion of the motion *in limine*, Appellant again objected to this statement as hearsay. *Id*. The trial court then reversed course and **sustained** the objection. *Id*. The Commonwealth then asked, "Were you able to determine whether Donte Harris lived there?" *Id*. at 89. Officer Garron responded that Donte Harris "provided an address in North Carolina." *Id*.

"[W]here the trial court has sustained the objection, even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Manley*, 985 A.2d 256, 267 (Pa. Super. 2009). Here, Appellant did not request either a mistrial or a curative instruction after the trial court sustained his objection; thus, he has waived any potential error related to this testimony.

We now consider Appellant's contention that the trial court erred by permitting testimony about "specific violent crimes in the area of the arrest that were not alleged to have been committed by Appellant, on the day of arrest, or even at the location of the arrest." Appellant's Brief at 23. Similarly, we consider Appellant's argument that the trial court erred by permitting testimony "concerning an irrelevant and highly prejudicial police report of a separate incident involving Appellant for which no charges were filed, no arrests were made and no criminal proceedings ever commenced." Appellant's Brief at 26. For both issues, Appellant cites to the same testimony at trial. *Id*. at 23-25 (citing N.T., 10/11/2018, at 62) and *id*. at 26-27 (citing N.T., 10/11/2018, at 62).

By way of background, prior to trial, Appellant made an oral motion *in limine* requesting the trial court not permit the Commonwealth to introduce an incident report from September 15, 2017, regarding a shooting at 1217 Clover Lane. N.T., 10/11/2018, at 12. The Commonwealth responded that

it intended to offer this information, as well as other information about violence in the Clover Lane area, as part of the history of the case. *Id*. at 13. At that point, the trial court overruled the objection, and told Appellant to re-raise the objections during the course of trial. *Id*.

During Officer Garron's testimony, the Commonwealth asked about the "shootings … in the area of 12th and Clover." N.T., 10/11/2018, at 62. Appellant objected and requested a sidebar. *Id*. The Commonwealth explained that it was going to ask questions about a shooting in the area "a month before they began an investigation." *Id*. at 63. The trial court **sustained** the objection, and no questions about the shooting were asked. *Id*.

On appeal, Appellant complains that he was prejudiced by this testimony. Appellant's Brief at 25, 27. However, the trial court sustained Appellant's objection, and the testimony about a shooting in the area was not offered into evidence. Again, "where the trial court has sustained the objection, even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Manley*, 985 A.2d at 267. Here, Appellant did not request either a mistrial or a curative instruction; thus, he has waived any error related to this issue.

Finally, we consider Appellant's issue concerning whether the trial court's admitting testimony about Appellant's decision to invoke his *Miranda*

rights, its subsequent denial of a mistrial, and its decision to provide a curative instruction, violated Appellant's rights under the Fifth Amendment's privilege against self-incrimination. Appellant's Brief at 18-23.

We provide the following background. At trial, the Commonwealth asked Officer Garron why he **Mirandized** the four adults who were handcuffed. N.T., 10/11/2018, at 90. Officer Garron responded as follows: "We give every adult their [*sic*] **Miranda** warnings. It's their [*sic*] rights. We let them know, you have the right to remain silent. Some people invoke that right. [Appellant] invoked that right. Others give up that right and they can make statements if they want."[6] **Id**. Counsel for Appellant immediately requested a sidebar.

_____

[6] "[A] person must be informed of his or her **Miranda** rights prior to custodial interrogation by police." **Commonwealth v. Bess**, 789 A.2d 757, 762 (Pa. Super. 2002). "Interrogation means police questioning or conduct calculated to, expected to, or likely to evoke an admission." **Id**. (internal quotation marks omitted). "Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself." **Id**.

Here, Appellant and the other adults were clearly in custody, having been handcuffed for the protection of the officers; however, they were not under arrest at this juncture. There is nothing in the record to indicate that police were questioning or intended to question these adults. Thus, **Miranda** warnings were not actually required at this point. Nevertheless, because they were provided, and the jury was informed as such, we must evaluate whether the subsequent reference to Appellant's invocation of these rights violated the Fifth Amendment. Moreover, in Pennsylvania, we have concluded that "the timing of the silence, whether it be pre or post-arrest, or pre or post-**Miranda** warnings, is not relevant to the question of whether a prosecutor's use of the silence as substantive evidence of guilt
*(Footnote Continued Next Page)*

At sidebar, counsel requested a mistrial because Officer Garron commented on Appellant's Fifth Amendment right to remain silent. *Id*. The trial court overruled the objection, stating that the testimony was not grounds for a mistrial, and offered to provide a curative instruction immediately or at a later date. *Id*. at 91. Counsel for Appellant declined the trial court's offer to provide a curative instruction, wishing to "call less attention to this." *Id*. at 92. The trial court did not provide a curative instruction at that time. Nevertheless, over the objection of Appellant's counsel, the trial court concluded that it would indeed offer a cautionary instruction as part of its jury charge. The trial court instructed the jury as follows. "I want to also advise and to instruct that any Defendant, including [Appellant], when detained by the police when entering a premise has a constitutional right not to provide a statement. His silence at the scene is not a suggestion of guilt nor a bad act in itself." N.T., 10/12/2018, at 65-66.

On appeal, Appellant argues both that the underlying testimony was so *de minimis* that the trial court should not have provided a curative instruction, **see** Appellant's Brief at 22-23, **and** that the underlying testimony was so prejudicial that the trial court should have sustained the objection and granted a mistrial, **see id**. at 18-21.

*(Footnote Continued)* ―――――――――

violates an individual's right against self-incrimination." **Commonwealth v. Molina**, 104 A.3d 430, 449-50 (Pa. 2014) (Opinion Announcing Judgment of the Court).

Testimony about a defendant's decision not to speak to authorities is inherently prejudicial. "The view of [the Pennsylvania Supreme] Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well established." *Commonwealth v. Turner*, 454 A.2d 537, 539 (Pa. 1982). Our Supreme Court has stated that

> [w]e would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt. It is clear that [t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury.

*Commonwealth v. Haideman*, 296 A.2d 765, 767 (Pa. 1972) (internal quotation marks and citations omitted).

"The rule against reference to a defendant's post-arrest silence clearly relates to jurors' inferences from such silence. The rationale is that jurors expect an innocent person charged with a crime to deny guilt." *Commonwealth v. Crews*, 640 A.2d 395, 404-05 (Pa. 1994). In fact, "[t]he prejudice to the defendant resulting from reference to his silence is substantial." *Turner*, 454 A.2d at 539.

Where, as here, "an improper reference to [a defendant's] silence was made, if we also conclude that it is clear that the error did not contribute to the verdict, the error may be deemed harmless." *Commonwealth v. Mitchell*, 839 A.2d 202, 214-15 (Pa. 2003). Additionally, our courts have

held that such error can be cured through curative instructions. ***See***

***Commonwealth v. DiNicola***, 866 A.2d 329, 336-37 (Pa. 2005).

However, counsel for Appellant declined the trial court's offer to provide a curative instruction because counsel wished to call less attention to the issue, but Appellant now claims on appeal he was prejudiced by Officer Garron's testimony. ***See*** Appellant's Brief at 18-21. "When counsel chooses to refuse appropriate curative instructions for this legitimate tactical reason, the defense may not plead prejudice on appeal." ***Commonwealth v. Miller***, 481 A.2d 1221, 1223 (Pa. Super. 1984); ***see also Commonwealth v. Quartman***, 385 A.2d 429, 432 (Pa. Super. 1978) ("In every case, it is a tactical decision to be made by defense counsel, and the rendering of an unfavorable verdict should not entitle a defendant, who did not elect to protect himself to the maximum in his first trial, to an automatic retrial."). In other words, if we are to determine that a curative instruction could allay the prejudice from Officer Garron's testimony, Appellant may not plead prejudice on appeal. Thus, we now determine whether a curative instruction was adequate in this case.

> [I]n Pennsylvania adequate instructions under some circumstances may cure error of the nature here complained of. Initially, whether the harm can be removed by curative instructions will be within the sound discretion of the trial judge and his determination will be subject to appellate review. In making this decision, the following will be important considerations but not necessarily exclusive: (1) the nature of the reference, particularly, whether it was a specific comment on the accused's silence at trial or at the time of arrest or whether it was … merely a reference to the fact that incriminating evidence

of the Commonwealth was undenied or uncontradicted; and (2) whether the accused's silence was exploited by the district attorney.

***Commonwealth v. Maloney***, 365 A.2d 1237, 1241 (Pa. 1976) (plurality).

In ***Maloney***, a police officer testified that Maloney "refused to give a statement." ***Id.*** at 1239. Maloney's counsel did not object. Shortly thereafter, the Commonwealth asked the officer the following: "Now, you advised the defendant of his constitutional rights and you took no statement from him; is that correct?" ***Id***. The officer responded in the affirmative, and counsel for Maloney objected. The objection was sustained and counsel moved for a mistrial. The trial court denied the mistrial, but granted the request for a curative instruction. On appeal, Maloney contended that the curative instruction could not cure the inherent prejudice of the question and answer. In concluding the trial court did not abuse its discretion in denying a mistrial, our Supreme Court pointed out that

> while the particular testimony of [the officer] constituted a specific reference to silence at a time when Maloney had the constitutional right to remain tight-lipped and this could have caused an improper inference of guilt, this testimony was not objected to. The district attorney's follow-up question which prompted the motion for a mistrial was not an exploitation of Maloney's silence, that is, it did not ask the jury to draw an improper inference. Further, the court's instructions were timely and adequate.

***Id***. at 1241.

Furthermore, in ***Commonwealth v. Anderjack***, 413 A.2d 693 (Pa. Super. 1979), on cross-examination by Anderjack's counsel, an officer

testified that Anderjack refused to sign a waiver of rights form. Anderjack objected and requested a mistrial. The trial court denied Anderjack's motion for a mistrial and offered a curative instruction. This Court pointed out that

> in deciding whether a cautionary instruction was sufficient, we must closely scrutinize the facts of the specific case, with particular attention to the following: 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction.

*Id*. at 698. In **Anderjack**, this Court considered the following: 1) testimony that Anderjack refused to sign a waiver of rights form may only "indicate to the jury that the defendant was uncooperative in some way;" 2) "[t]he reference was not elicited by the district attorney or by the court but by [Anderjack's] counsel;" 3) there was a single reference that was not brought up again by any party; and 4) "[t]he cautionary instruction was given promptly, only minutes after the reference." *Id*. at 699-700. In weighing these factors, this Court concluded that the trial judge did not err in denying Anderjack's motion for a mistrial.

We also find instructive this Court's decision in **Commonwealth v. Mays**, 523 A.2d 357 (Pa. Super. 1987) (abrogated on other grounds). In **Mays**, Mays and a cohort broke into the victim's apartment, and Mays subsequently ordered his cohort to shoot the victim. Mays was convicted of second-degree murder and related charges. At trial, the Commonwealth called the arresting officer to testify. "The officer … testified that [Mays] refused to give a statement after being advised of his **Miranda** rights." *Id*.

- 14 -

at 358. The Commonwealth requested a sidebar, and "expressed surprise at the officer's remarks." *Id*. The trial court struck the testimony from the record and instructed the jury "to completely disregard whatever that witness stated on the witness stand." *Id*. at 359. On appeal, Mays argued that his constitutional rights were violated by the officer's reference to his post-arrest silence. This Court considered the prejudicial nature of the officer's testimony, the Commonwealth's surprise at the remarks, and the fact that the Commonwealth did not exploit the situation, in concluding that Mays was not prejudiced by this testimony.

With the foregoing in mind, we turn to the instant case, and begin with "the nature of the reference to defendant's silence." *Anderjack*, 413 A.2d at 698. Here, the testimony was that Appellant invoked his *Miranda* rights. As in *Mays*, this is a direct reference to Appellant's exercise of his constitutional right to remain silent at the time of his arrest, and is precisely the type of testimony that is prohibited and deemed prejudicial.

Turning to "how [the testimony] was elicited," we conclude that although the Commonwealth was responsible for the testimony, as in *Mays*, the testimony did come as a surprise. *Anderjack*, 413 A.2d at 698. While the Assistant District Attorney is responsible for asking why the individuals were *Mirandized* in the first place, Officer Garron volunteered this irrelevant and prejudicial information.

The third factor to consider is whether the Commonwealth exploited the reference. It is clear that the Commonwealth did not. The record shows, and Appellant does not dispute, that the Commonwealth did not bring up this issue again at any point during the trial. Finally, we consider the promptness of the curative instruction. As set forth *supra*, the trial court was willing to give a curative instruction immediately, but Appellant requested that the trial court not do so.

Based on the foregoing, we conclude that despite the fact that Officer Garron directly commented on Appellant's invocation of his right to remain silent in response to a question from the Commonwealth, the trial court's offer of a curative instruction was sufficient to cure any prejudice in this case. We observe that "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury." **Commonwealth v. Simpson**, 754 A.2d 1264, 1272 (Pa. 2000).

At the time of the prejudicial testimony, the trial judge commented, "I think it just went right over [jurors' heads.] I don't think it has any meaning whatsoever at this point in time[.]" N.T., 10/11/2018, at 92. Appellant essentially agreed with this assessment. **Id**. Moreover, "[i]t is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence." **Simpson**, 754 A.2d at 1272. Thus, we conclude that this quick reference to Appellant's invocation of his Fifth Amendment right to remain silent is the type of comment that can be cured

by a curative instruction. Therefore, the trial court did not err or abuse its discretion by giving a curative instruction. **See Maloney**, **supra**; **Anderjack**, **supra**; **Mays**, **supra**.

For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Murray joins in this memorandum.

PJE Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/31/20