J-S61008-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EUGENIO HERNANDEZ-ANDINO, | |
| Appellant | No. 118 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 30, 2017
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000519-2015

BEFORE:  BENDER, P.J.E., BOWES, J., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 12, 2018**

Appellant, Eugenio Hernandez-Andino, appeals from the judgment of sentence of life imprisonment, without the possibility of parole, imposed after a jury convicted him of first-degree murder.  On appeal, Appellant challenges the sufficiency of the evidence to sustain his conviction, as well as the trial court's refusal to instruct the jury on voluntary manslaughter.  After careful review, we affirm.

From October 30th to November 1st of 2017, Appellant was tried before a jury on a single charge of first-degree murder, based on evidence that he stabbed the victim in this case three times, resulting in the victim's death.  At the close of trial, the jury convicted Appellant.  He was sentenced on November 30, 2017, to a term of life imprisonment without the possibility of parole.  Appellant filed a timely notice of appeal, and he also timely complied

with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court issued a Rule 1925(a) opinion on February 9, 2018. Herein, Appellant presents two issues for our review:

A. Was the evidence presented sufficient to sustain a verdict of guilty to murder in the first degree when [Appellant] presented evidence of his having acted in self-defense, or acting based upon his belief, erroneous or not, that the victim may have been acting to assault or try and kill [Appellant]?

B. Whether the court acted properly in denying [Appellant's] request for a jury charge as it relates to voluntary manslaughter?

Appellant's Brief at 7 (unnecessary capitalization omitted).

In assessing Appellant's first issue, we apply the following standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

In the case *sub judice*, Appellant claims that the Commonwealth failed to prove that he possessed the specific intent to kill the victim to sustain his conviction of first-degree murder. *See Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013) ("There are three elements of first-degree murder: (i) a

- 2 -

human being was unlawfully killed; (2) [Appellant] was responsible for the killing; and (3) [Appellant] acted with malice and a specific intent to kill.") (citing, *inter alia*, 18 Pa.C.S. § 2502(a)). In support of this position, Appellant relies on his own trial testimony that he stabbed the victim based on his belief, reasonable or unreasonable, that the victim posed a deadly threat to him. Appellant claims that "the evidence that [he] acted in an attempt to protect himself was relatively unchallenged" by the Commonwealth and, therefore, "[t]he jury's verdict was not supported by evidence that could reasonably prove[,] beyond a reasonable doubt[,] that [Appellant] acted with the necessary intent to kill." Appellant's Brief at 15. Appellant argues that, instead, the Commonwealth's evidence could sustain only a conviction for 'unreasonable-belief' voluntary manslaughter.

The record does not support Appellant's argument. The evidence presented at trial, as summarized by the trial court, established the following:

> [O]n January 22, 2015, at approximately 3:30 P.M., 30 year old Jose Reyes-Espinosa entered the Washington Barber Shop located at 1129 Hamilton Street, Allentown, Lehigh County, Pennsylvania, to get his hair cut. Espedi Olivo, a 34[-]year[-]old barber working at the Washington Barber Shop, was between customers when Mr. Reyes-Espinosa[2] arrived at the barbershop. He was sitting in the front of the establishment by the front door. … Soon thereafter, Mr. Olivo saw [Appellant][4] … enter the Washington Barber Shop. He observed [Appellant] approach the victim in the barber chair, and he watched a verbal argument ensue. Mr. Olivo overheard [Appellant] say to the victim, "Where are your friends now?" According to Mr. Olivo, Mr. Reyes-Espinosa appeared to be frightened, as demonstrated by his body language and the tone of his voice. In an effort to stop the argument, Mr. Olivo approached the two (2) men and reminded them that they were adults and should not fight. When [Appellant] told him that

the argument "does not involve him," Mr. Olivo backed off and sat down. As the argument continued, Mr. Olivo watched the victim get his coat to leave. Suddenly, [Appellant] grabbed Mr. Reyes-Espinosa and a physical altercation ensued. Mr. Olivo observed [Appellant] "cut [the victim] a few times with a knife," and testified that the victim did not have a weapon nor did he hit [Appellant]. In fact, Mr. Olivo indicated that the victim was merely trying to defend himself with his hands while he was being stabbed by [Appellant]. Mr. Olivo noted that after [Appellant] stabbed the victim multiple times, [Appellant] immediately left the barbershop. Simultaneously, the victim ran towards the back of the barbershop and appeared to start to lose consciousness. The entire altercation was captured on security surveillance from four (4) different angles. The security surveillance video was consistent with Mr. Olivo's version of events.[6] In addition, another employee of the barbershop[7] used his cellular phone to videotape the aforementioned events.[8] This video was also consistent with Mr. Olivo's testimony.

[2] Mr. Olivo knew Mr. Reyes-Espinosa as "flaco," which means "thin" in Spanish. According to the autopsy report, the victim was 5'11" and 143 pounds.

[4] Mr. Olivo was familiar with [Appellant], as he was a regular customer at the barbershop. [Appellant's] nickname was "monster." [Appellant] was 6'1" and weighed approximately 244 pounds.

[6] A view of the surveillance video shows [Appellant's] stabbing the victim three or four times, all with great force. In fact, the victim is lifted off the ground from [Appellant's] powerfully thrusting the knife into the victim's body.

[7] Juan Garcia, also known as "Fernando," [Appellant's] roommate at the time, was working at the Washington Barber Shop. He was [Appellant's] barber. "Fernando" videotaped these events on his cellular phone. His whereabouts were unknown at the time of trial.

[8] Officer Alex De La Iglesia of the Allentown Police Department assisted in the investigation. His particular assignment was to make contact with Juan Garcia, a/k/a "Fernando," as he was seen videotaping the earlier events of the day at the barbershop on his cellular phone. Officer De La Iglesia established surveillance in the area of 1338 Hamilton Street, Apartment #2, Allentown, and he observed

"Fernando" enter the apartment complex. Officer De La Iglesia made contact with "Fernando" and located two (2) iPhones in his possession. Officer De La Iglesia searched the content of the cell phones and he located the video of the homicide at the barbershop on Fernando's iPhone 6C.

Immediately after this altercation, the victim called 911 to seek help. Consequently, Officer Edward Fitzsimmons of the Allentown Police Department was dispatched to the Washington Barber Shop for report of an injured person therein. When Officer Fitzsimmons arrived on scene in full uniform and in a marked police cruiser, Officer Amaury of the Allentown Police Department was already present. Officer Amaury related to Officer Fitzsimmons that a stabbing had occurred at the barbershop, and he was directed to the back of the establishment. In the back hallway, Officer Fitzsimmons observed the victim, Jose Reyes-Espinosa, lying on a mattress in a break room with blood on his shirt. He also noticed blood splatter in the barbershop and in the back hallway. The victim appeared to be in serious condition, as his breaths were shallow. Allentown paramedics arrived on scene and transported the victim to Lehigh Valley Hospital - Cedar Crest Campus. After the victim was removed from the premises, the building was cleared and the area was secured.

Detective Stephen Milkovits of the Allentown Police Department was summoned to the scene. By the time he arrived, the victim had already been taken by ambulance to the hospital for treatment. Detective Milkovits spoke with the patrol officers in the barbershop, interviewed "Fernando," as well as viewed the surveillance video from the barbershop. A few hours later, Detective Milkovits was able to locate [Appellant's] vehicle, a burgundy 2001 Ford Taurus, approximately three (3) blocks from the barbershop. The subject vehicle was towed and a search warrant for same was obtained. A search of the vehicle yielded a knife[10] in the pouch behind the front passenger seat. Rudolf Hoogenboom, an officer with the identification unit of the Allentown Police Department, documented not only the crime scene, but also the evidence recovered from [Appellant's] vehicle.

[10] [Appellant] indicated that this knife recovered from his vehicle was not the knife used at the barbershop. [Appellant] stated that he had a "work knife" on him at the Washington Barber Shop.

In addition, at 4:30 A.M. on January 23, 2015, Detective Milkovits went to [Appellant's] apartment to execute a search warrant. At that time, [Appellant], [Appellant's] girlfriend, Janet Pedez, and her children were present in the apartment. A search of the premises revealed the clothing items that [Appellant] wore in the surveillance video of the barbershop during the stabbing of the victim. Such clothing items included a green reflective vest, work boots, dark sweatpants, two (2) sweatshirts, and tan work gloves. In furtherance of the investigation, these clothing items were sent to the Pennsylvania State Police lab for serology testing. Sarah Kase, a forensic scientist in serology and an expert in serology, analyzed the items submitted to the lab. Based on her positive findings, Ms. Kase then prepared cuttings and swabs to be sent to the DNA lab with regard to the buccal swab, a swab of [Appellant's] left work boot, and cuttings from the left work boot and [Appellant's] sweatpants. Thereafter, Amber Gegg, a forensic DNA analyst and an expert in DNA analysis, analyzed the samples received from serology. Her analysis established a positive match between the DNA in the victim's buccal swab sample and the material tested on the cutting from [Appellant's] sweatpants and the cutting from [Appellant's] left work boot.

Detective Louis Tallarico of the Lehigh County District Attorney's Office, assigned to the Homicide Task Force, also participated in the homicide investigation. Detective Tallarico interviewed [Appellant] at 6:00 A.M. on January 23, 2015, with Detective Milkovits. [Appellant] executed an Allentown Police Department Waiver of Rights Form prior to the interview, and agreed to speak with the detectives. [Appellant's] interview lasted approximately fifty (50) minutes and evolved over time. Indeed, at the beginning of the interview, [Appellant] denied being at the barbershop on the day in question and denied knowing "Fernando." However, [Appellant] changed his story and indicated that he had been at the barbershop to retrieve the apartment key from "Fernando" and that the victim confronted him. He further stated that the victim was on his cell phone calling his friends to come over to the barbershop.[11] [Appellant] ultimately admitted to stabbing the victim with a knife.

[11] [Appellant] told the detectives that in 2009[,] he had been assaulted at 8th and Chew Streets, Allentown, Lehigh County. An Allentown Police Department Incident Report indicated that the victim, "David Irizarry Cruz" a/k/a Eugenio Hernandez-Andino, alleged that six (6) men jumped him and that he went to the Lehigh Valley Hospital

- 6 -

for treatment for his hand. [Appellant] was uncooperative with the authorities at the time and no one was identified in the report. There was no reference to a stabbing in the report.

Alli Avila, a 42 year old barber who worked at the Washington Barber Shop on January 22, 2015, knew Mr. Reyes-Espinosa, who was a regular customer, as well as [Appellant] from the barbershop. He related that on the day at issue, he witnessed Mr. Reyes-Espinosa enter the barbershop and sit down in his barber chair. Then, [Appellant] walked in and came up to Mr. Reyes-Espinosa and began to argue with him. Mr. Avila overheard [Appellant], who was angry, tell Mr. Reyes-Espinosa that he knows where he lives. Mr. Reyes-Espinosa then removed his barber smock and picked up his hat and coat in an effort to leave the premises. Mr. Avila witnessed [Appellant] physically grab Mr. Reyes-Espinosa. At no point did Mr. Avila observe Mr. Reyes-Espinosa threaten or punch [Appellant], or brandish a weapon.

Unfortunately, Mr. Reyes-Espinosa succumbed to his injuries. An autopsy on the victim's body was performed by Barbara Bollinger, M.D., a forensic pathologist, and an expert in the field of anatomical, clinical, and forensic pathology, on January 23, 2015. Dr. Bollinger noted three (3) stab wounds to the victim's torso, as well as one incised wound. Dr. Bollinger opined that each of the stab wounds was a potentially lethal stab wound.[12] The cause of death was deemed to be stab wounds to the torso, and Dr. Bollinger opined that the manner of death was homicide. Officer Justin Motz of the Allentown Police Department, and a member of the identification bureau, attended the autopsy and collected the relevant evidence, including a buccal swab from the victim.

[12] The victim had a stab wound to the right clavicle area which perforated his lung[,] a stab wound to the left underarm area of the chest, and a stab wound to the left upper abdominal quadrant which perforated his liver, diaphragm, and heart.

According to [Appellant's testimony at trial], in 2009, the victim, along with a group of Trinitarios [gang members], assaulted and stabbed him. [Appellant] indicated that he was successfully able to avoid these gang members until 2014, when he moved to Philadelphia. Thereafter, in 2015, [Appellant] returned to the area Allentown. On January 22, 2015, [Appellant]

admitted to entering the barbershop after work. [Appellant] stated that upon his entering the barbershop establishment, Mr. Reyes-Espinosa began to say nasty and threatening things to him. Therefore, [Appellant] feared that the Trinitarios were going to do something to him in the future, based on the 2009 altercation. [Appellant] testified that when Mr. Reyes-Espinosa got up to leave and put his coat on, [Appellant] saw Mr. Reyes-Espinosa put his hand in his coat pocket. Fearing that Mr. Reyes-Espinosa had a weapon, although he did not see one, and fearing that a cut to him could be detrimental in light of the fact that he was on blood thinners, he physically fought with the victim. At that moment, [Appellant] claim[ed] that he "blacked out" and could not recall details. [Appellant] did remember that he wanted to "teach [the victim] a lesson" and "poked" at him two (2) or three (3) times with the knife to hurt him, but did not intend to kill him. [Appellant] repeatedly stated that he grabbed the victim because he was scared that the victim would tell the Trinitarios and then they would get him in the future. [Appellant] conceded that he could have left the premises prior to the argument becoming physical, but he did not.

Trial Court Opinion (TCO), 2/9/18, at 3-10 (citations to the record and some footnotes omitted).

It is clear that this evidence was sufficient to sustain Appellant's conviction of first-degree murder. Witnesses testified that Appellant was the initial aggressor, and that the victim did not retaliate in a threatening or hostile manor. Instead, the victim attempted to leave the barbershop, at which point Appellant grabbed the victim and stabbed him three times in the torso. The forensic pathologist testified that Appellant's knife punctured the victim's heart, liver, and lung. This evidence demonstrated that Appellant acted "with malice and specific intent to kill." *Commonwealth v. Lyons*, 79 A.3d 1053, 1062 (Pa. 2013) (citations omitted) ("[A] jury's determination that the accused engaged in first-degree murder is supported when there is evidence

to suggest that he used a deadly weapon on a vital part of the victim's body, thereby causing [the victim's] death.") (citation omitted).

We also reject Appellant's assertion that the evidence supported a conviction for 'unreasonable belief' voluntary manslaughter, also referred to as 'imperfect belief' self-defense. That crime is defined as follows:

> **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b). Regarding this form of voluntary manslaughter, our Supreme Court has clarified that,

> [t]he derivative and lesser [self-]defense [claim] of imperfect belief self-defense is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. **All other principles of justification under 18 Pa.C.S. § 505 must [be satisfied to prove] unreasonable belief voluntary manslaughter.**

***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012) (internal citations and quotation marks omitted; emphasis added). Justification under section 505 requires a defendant to prove that he "was free from fault in provoking the difficulty which culminated in the slaying[,] and … that the [defendant] did not violate any duty to retreat." ***Id.*** (citations omitted); ***see also*** 18 Pa.C.S. § 505(b)(2)(i). Here, Appellant had a duty to retreat from the barbershop, and he conceded at trial that he could have done so prior to the physical altercation with the victim. Therefore, his own testimony defeated his claim of unreasonable-belief voluntary manslaughter.

- 9 -

Appellant's second issue fails for this same reason. Appellant contends that the court erred by not instructing the jury on unreasonable-belief voluntary manslaughter.

> [A] trial court shall only instruct on an offense where the offense has been made an issue in the case and **where the trial evidence reasonably would support such a verdict**. … Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury.

***Commonwealth v. Browdie***, 671 A.2d 668, 674 (Pa. 1996) (emphasis added); ***see also Commonwealth v. Carter***, 502 Pa. 433, 466 A.2d 1328 (1983) (holding that a voluntary manslaughter charge is appropriate only when that crime is made an issue in the case, and evidence would support such a verdict). Because, for the reasons stated *supra*, Appellant's testimony did not support the offense of unreasonable-belief voluntary manslaughter, the court did not err in refusing to charge the jury on that crime.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/12/18</u>

- 10 -