J-A10030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                :  PENNSYLVANIA
                                                :

           v.                        :

LARRY RAY YAW JR.,           :

          Appellant        :  No. 1481 EDA 2018

Appeal from the Judgment of Sentence April 16, 2018
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s):  CP-39-CR-0001980-2016

BEFORE:  GANTMAN, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                  **FILED JUNE 19, 2019**

Larry Ray Yaw, Jr., appeals from the judgment of sentence imposed on April 16, 2018, in the Court of Common Pleas of Lehigh County, following his jury conviction of one count each of murder in the first degree, burglary, kidnapping to facilitate a felony, and kidnapping to inflict injury or terror.[1] The trial court sentenced him to life without parole to be followed by an aggregate term of incarceration of 10 to 20 years' imprisonment.  On appeal, Yaw challenges:  (1) the display of autopsy photographs to the jury; (2) the trial court's refusal to charge the jury on voluntary manslaughter; and (3) the trial

---

[1] 18 Pa.C.S.A. §§ 2502(a), 3502(a)(1), 2901(a)(2), and 2901(a)(3), respectively.

court's refusal to accept a negotiated guilty plea agreement. Based upon the following, we affirm.

In its opinion, the trial court aptly sets forth the underlying factual and procedural history in this matter. *See* Trial Court Opinion, 6/5/2018, at 1-15. We briefly note that, on April 3, 2016, following an argument with his girlfriend over her drug use and infidelity, Yaw kidnapped her, beat her until she revealed the location of the man she slept with, and sexually assaulted her. Yaw subsequently drove to the residence of the man, Brian Frank, broke into his apartment, shot through Frank's bedroom door, and beat him to death with a baseball bat. *See id.*

Both Yaw and the Commonwealth agree that, on February 26, 2018, a meeting took place in which they apprised the trial court of a possible plea agreement. *See* Trial Court Opinion, 6/5/2018, at 18-19; Yaw's Brief, at 3; the Commonwealth's Brief, at 16. They also agree that the trial court indicated that it would not accept the plea agreement. *See id.*

A jury trial took place in early March 2018. During the guilt phase of the trial, Yaw argued both that he lacked the intent to kill Frank and that he acted in the heat of passion, and he requested that the trial court charge the jury on voluntary manslaughter. *See* N.T. Trial, 3/05/2018, at 38; N.T. Trial, 3/08/2018, at 37, 48-49. The trial court refused. *See* N.T. Trial, 3/08/2018, at 37. During the testimony of the Commonwealth's forensic pathologist, Dr. Barbara Bollinger, approximately nineteen autopsy photos showing the extent

of Frank's injuries were introduced into evidence and reviewed by the jury. *See* N.T. Trial, 3/06/2018, at 162-195.

On March 8, 2018, the jury convicted Yaw of the aforementioned offenses. On March 9, 2018, following a penalty phase hearing, the jury imposed a life sentence on the charge of murder in the first degree. On April 16, 2018, the trial court sentenced Yaw as delineated above. The instant, timely appeal followed.[2, 3]

In his first claim, Yaw contends that the trial court erred in allowing the Commonwealth to introduce and place into evidence the nineteen autopsy photos. Yaw's Brief, at 5-6. Our standard of review is settled.

> We will affirm a trial court's admission of photographs absent an abuse of discretion. Further,
>
>> When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:
>>
>>> First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's

_____

[2] In response to the trial court's order, Yaw filed a timely concise statement of errors complained of on appeal. On June 5, 2018, the trial court issued an opinion.

[3] Despite this court granting him two extensions of time, counsel for Yaw filed his brief approximately two weeks late. On September 14, 2018, Yaw, acting *pro se*, sent a series of documents to this Court, claiming ineffective assistance of counsel. *See* Defendents (sic) Letter to all Parties Stating Facts for Record, 9/04/2018, at unnumbered pages 1-2.

> understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1033-1034 (Pa. 2012) (citations omitted), *cert. denied*, 569 U.S. 922 (2013).

Yaw's brief argument is undeveloped, as it consists largely of boilerplate language on the admissibility of photographs. Yaw's Brief, at 5-6. The last four sentences of this section of his brief are bald and conclusory statements that, since the manner of death was not at issue, the admission of the photographs was unnecessary and prejudicial. *Id.* at 6. Yaw does not point to any legal support for his claim that the "sheer volume of the photographs make the admission of [them] prejudicial[,]" *id.* at 5, nor does Yaw explain how the prejudicial value of the evidence outweighed its probative value. *See id.* at 5-6. Furthermore, as the Commonwealth discusses, *see* Commonwealth's Brief, at 21, at defense counsel's request, the trial court instructed the jury as follows:

> Autopsy photographs will be admitted into evidence for the purpose of showing the nature of the wounds received by Mr. Frank and to help you understand the testimony of Dr. Bollinger who will be referring to them.
>
> They are very unpleasant to look at. You should not let it stir up your emotions to the prejudice of the defendant.
>
> Your verdict must be based on a rational and fair consideration of all of the evidence and not on passion or prejudice against the

- 4 -

defendant, the Commonwealth, or anyone connected with this crime.

N.T. Trial, 3/06/2018, at 149-150. "The law presumes the jury will follow the instructions of the court." ***Commonwealth v. Conte***, 198 A.3d 1169, 1178 (Pa. Super. 2018) (citation omitted), *appeal denied*, 2019 WL 1649032 (Pa. Apr. 17, 2019). Yaw does not explain why this instruction was inadequate and does not point to anything that would indicate that the jury failed to follow the court's instruction. Yaw's first claim fails.

In his second claim, Yaw contends that the trial court erred in failing to charge the jury on voluntary manslaughter. Yaw's Brief, at 6-7. Again, Yaw's claim is undeveloped and lacking in merit.

We briefly note:

In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Moreover, it is well-settled that the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

***Commonwealth v. Williams***, 176 A.3d 298, 314 (Pa. Super. 2017) (quotation marks and citations omitted), *appeal denied*, 187 A.3d 908 (Pa. 2018).

Here, Yaw's argument suffers from the same inadequacies discussed above. The argument is all but devoid of legal citation, consisting of a single citation to boilerplate language on jury instructions and a listing of the statutory elements of voluntary manslaughter. Yaw's Brief, at 6-7.

In its opinion, the trial court aptly discusses this claim as follows:

Next, [Yaw] argues that [the trial c]ourt erred in denying the defense request to instruct the jury on the charge of [v]oluntary [m]anslaughter. As the Supreme Court of Pennsylvania has articulated, "[a] voluntary manslaughter instruction is warranted only where the offense at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, appellant acted under a sudden and intense passion resulting from serious provocation by the victim. If any of these be wanting — if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed hits sway, the killing will be murder." ***Commonwealth v. Sanchez***, 82 A.3d 943, 979-980 (Pa. 2013) (citations omitted)[, *cert. denied* 135 S.Ct. 154 (2014). Furthermore, "[a]n objective standard is applied to determine whether the provocation was sufficient to support the defense of . . voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." ***Commonwealth v. Miller***, 987 A.2d 638, 649-650 (Pa. 2009).

In the within matter, there was absolutely no provocation from the victim. Indeed, when [Yaw] encountered Mr. Frank, he was sleeping in his bed in Whitehall Township. Instead, [Yaw] alleged that the provocation stemmed from [his girlfriend] when she allegedly claimed that the victim had raped her. However, [the trial c]ourt notes that this alleged statement would have occurred when [Yaw] was with [his girlfriend] at their residence located at 1924 Big Road, Gilbertsville, Montgomery County. Then, allegedly armed with this knowledge, [Yaw] drove a half an hour away to Mr. Frank's apartment located at 927 Third Street, Whitehall, Lehigh County, with a gun and a baseball bat in his possession. During this time frame, [Yaw] had ample time to calm down and

- 6 -

reflect on his actions. Regardless of the lapse of time negating provocation and heat of passion, the evidence admitted at trial through the telephone calls placed by [Yaw] while he was incarcerated in the Lehigh County Jail demonstrated that [Yaw] believed that [his girlfriend] was pregnant with his child and that he was angry that she was doing drugs. [Yaw] failed to maintain his allegation that [his girlfriend] was raped by the victim.[a] Therefore, [Yaw's] argument that the provocation stemmed from [his girlfriend] is baseless.

> [a] Specifically, on April 23, 2016, [Yaw] indicated that he snapped when he heard that [his girlfriend] was pregnant: "When she told me she was pregnant is when I snapped. That's when I snapped." Also, on May 3, 2016, [Yaw] stated on the telephone that he was "in jail for standin up for what's fuckin right. I don't give a fuck if it was that whore or different fuckin whore. You're not gonna give dope to my pregnant fuckin girlfriend." Then, on May 14, 2016, [Yaw] recounted the events and spoke of [his girlfriend] being high, but not raped: "I came home and she was fuckin high. And that's when I took her phone and said, who the fuck gave you heroin?" . . . So, I fuckin, I, like, I sat her down and she's like I'm pregnant and then, that's when I snapped. That's when I said, you're pregnant with my fucking kid and you're shooting fucking dope? Like, how did you even get the fuckin dope? . . . I smack her, what are you fuckin the dude? And [she] said, yea, I'm fuckin him. And I said, yeah, I got somein for your fuckin ass and I put her down on the fuckin tarp, put a gun to her fuckin head and I couldn't shoot her. . . . and then fuckin I got her up and I was, I was like, I can't hurt you, I love you. I don't wanna hurt you. And then fuckin, immediately snapped, dude. Couldn't get outta that line of thinkin. . . . This guy gave her fuckin heroin. This guy . . . shot her full of fuckin heroin which coulda killed her and my baby." This version of events closely tracked [his girlfriend's] testimony at trial.

Nevertheless, counsel for [Yaw] argued that the question of whether the evidence indicated sufficient provocation to support a voluntary manslaughter defense should have gone to the jury. However, "a trial court must make an initial determination

- 7 -

whether sufficient evidence has been presented of serious provocation." ***Commonwealth v. Carter***, 502 Pa. 433, 466 A.2d 1328 (1983) (where the evidence does not support a finding of manslaughter, the trial court did not have to support the issue to the jury). Thus, based on the evidence presented at trial, [the trial c]ourt found that objectively there was no provocation. Therefore, as the record did not reflect a sufficient cause of provocation, [it] appropriately did not provide a charge for voluntary manslaughter.

Trial Court Opinion, 6/5/2018, at 16-18.

Here, Yaw does not cite to any legal authority to support his claim that he was entitled to an instruction on voluntary manslaughter and fails to address or refute the trial court's explanation of its decision not to give the requested charge. ***See*** Yaw's Brief, at 6-7. Thus, Yaw's claim fails.

In his final claim, Yaw maintains that the trial court erred in rejecting a proposed plea agreement. Yaw's Brief, at 8-9. We have stated:

The Pennsylvania Rules of Criminal Procedure grant the trial court broad discretion in the acceptance and rejection of plea agreements. There is no absolute right to have a guilty plea accepted. Accordingly, our Courts have reaffirmed that [w]hile the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if the court believes the terms do not serve justice. As these holdings make apparent, the Commonwealth's offer of plea, even if accepted by the defendant unequivocally, does not dispose of a criminal prosecution; indeed, the plea bargain is of no moment until accepted by the trial court.

***Commonwealth v. Chazin***, 873 A.2d 732, 737 (Pa. Super. 2005) (quotation marks and citations omitted), *appeal denied*, 887 A.2d 1239 (Pa. 2005).

As discussed *supra*, the parties all agree that, on February 26, 2018, there was a pre-trial meeting where they discussed the proposed plea

agreement and the trial court indicated in some manner that it was not willing to accept it. However, there is nothing in the certified record documenting this conversation. Moreover, there has been no attempt to provide this Court with a recreation of that discussion. *See* Pa.R.A.P. 1923.

"[W]e can only repeat the well established principle that 'our review is limited to those facts which are contained in the certified record' and what is not contained in the certified record 'does not exist for purposes of our review.'" *Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008), (quoting *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super.2006)). Moreover, "it is the appellant's burden to ensure that the certified record is complete." *Commonwealth v. Landis*, 89 A.3d 694, 698 n. 5 (Pa. Super. 2014) (citing Pa.R.A.P. 1921). Yaw's final claim fails.[4]

For all the foregoing reasons, we affirm Yaw's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/19/19

---

[4] Even if the certified record contained a transcript of the discussion, we would still find the claim waived. Yaw's argument on this issue, which consists of a paragraph of boilerplate and two sentences of argument, is woefully deficient. *See* Yaw's Brief, at 8-9.