J-S27042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MALIK CRAIG :
:
Appellant : No. 2611 EDA 2023

Appeal from the PCRA Order Entered September 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008907-2015,
CP-51-CR-0008908-2015

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MALIK CRAIG :
:
Appellant : No. 2612 EDA 2023

Appeal from the PCRA Order Entered September 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008907-2015,
CP-51-CR-0008908-2015

BEFORE: LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED DECEMBER 19, 2024**

Appellant, Malik Craig, appeals from the September 25, 2023, orders

entered in the Court of Common Pleas of Philadelphia County denying his

timely petitions filed under the Post Conviction Relief Act ("PCRA"), 42

_____

[*] Former Justice specially assigned to the Superior Court.

Pa.C.S.A. §§ 9541-95456, without an evidentiary hearing, at two separate trial court docket numbers: CP-51-CR-0008907-2015 and CP-51-CR-0008908-2015. After a careful review, we affirm.

The relevant facts and procedural history are as follows: On June 2, 2015, Appellant was arrested and charged with third-degree murder and possessing an instrument of crime at trial court docket number CP-51-CR-0008907-2015, as well as simple assault and recklessly endangering another person at trial court docket number CP-51-CR-0008908-2015. The charges arose from the shooting death of Nacear Gredic and the assault of Russell Davis on May 25, 2015. The trial court granted the Commonwealth's motion to consolidate the cases for trial, and in June of 2016, Appellant, represented by counsel, proceeded to a jury trial. The PCRA court has aptly summarized the evidence presented at the jury trial.

> On May 25, 2015, at approximately 2:00 p.m., Priscilla Destouet, her son, and her boyfriend, Russell Davis, were at Elmwood Park located at 65th and Elmwood Streets in Philadelphia. N.T., 6/10/16, at 123-24. Ramier Poindexter, father of Destouet's son, called her because he wanted to see their son. She told him she was busy with her new boyfriend. *Id.* at 124. Poindexter called again and again, asking to see their son. *Id.* Destouet and Davis walked a few blocks to Poindexter, and they dropped off the child. *Id.* Destouet and Poindexter began to argue, and, thus, Destouet and Davis walked back to the park with her son to get away from Poindexter. *Id.* at 129. Shortly after Davis and Destouet arrived at the park, Poindexter arrived with a group of people. *Id.* at 128-29. Davis, Destouet, and the child began to run away. *Id.* [Appellant] is the uncle of Poindexter, and he was part of the group that ran after Davis and Destouet. *Id.* at 130-31. [Appellant] and his group eventually caught up to Davis and Destouet, and [they] began to fight Davis. *Id.* During the fight, [Appellant] took Destouet's phone, and after he took the phone,

- 2 -

he took out a gun, pointed it at Davis, and threatened to shoot him. *Id.* at 138-39. Destouet and Davis called the police and made statements regarding this incident immediately following the incident. *Id.* at 151.

Later that same day, [Appellant], Poindexter, and others were together. *Id.* at 199. At around 9:00 p.m., Poindexter received information that Destouet and Davis were back at the park. *Id.* Poindexter asked [Appellant] to help him with this situation. *Id.* [Appellant] arrived at the park and spoke to a man on a bike. *Id.* at 149-50. They began to argue. [Nacear Gredic] and his friend, Harish Ellison, were walking into the park when [Gredic] stated to [Ellison] that he had a bad feeling, and he wanted to leave. They turned to leave. Ellison testified that he heard gunshots, and his friend was hit in the back by the gunshots several times. He fell into Ellison's arms. *Id.* at 50-52, 58.

[Gredic] was taken to the hospital where he was pronounced dead. Dr. Wardak, the forensic pathologist who examined [Gredic] in an autopsy, testified that [Gredic] died of a gunshot wound to the back and to the buttocks. He testified there would be no way for those shots to strike him in the back if [Gredic] and his attacker were standing face to face. N.T., 6/9/16, at 96, 107.

[Appellant] testified in his own defense. He testified that, after he fought with the man on the bike, [Gredic] came running up to him with a gun pointed at him. N.T., 6/13/16, at 202-05. [Appellant] stated that when [Gredic] approached him and was approximately 20-25 feet away, [he] drew his weapon and fired [at Gredic]. *Id.* at 205-06. [Appellant] told the jury that [Gredic] was facing him when he fired. [He] admitted to firing the fatal shots that killed [Gredic]. *Id.* at 210.

PCRA Court Opinion, filed 2/7/24, at 1-3.

The jury convicted Appellant on all charges, and on December 16, 2016, the trial court sentenced Appellant to an aggregate of fifteen years to thirty years in prison. Appellant filed a timely direct appeal to this Court.

On appeal, Appellant raised numerous issues, including: "Whether the trial court abused its discretion when it denied [A]ppellant's request for a

voluntary manslaughter charge to the jury when there was evidence on the record that this charge was warranted, resulting in substantial harm, and unfairness to [Appellant]?" **Commonwealth v. Craig**, No. 1728 EDA 2017, 2019 WL 2564144, at *2 (Pa.Super. filed June 21, 2019) (unpublished memorandum). In analyzing the claim, this Court held as follows:

> [Appellant] challenges the trial court's failure to provide the jury with the voluntary manslaughter jury instruction. Specifically, [Appellant] asserts there was sufficient evidence presented at trial to warrant a voluntary manslaughter jury instruction, and the trial court's failure to provide this instruction requires a new trial. However, as [Appellant] failed to preserve the issue before the trial court, we find this issue waived on appeal.
>
> In order to preserve a claim of error regarding the denial of a request for a jury instruction, Pennsylvania Rule of Criminal Procedure 647 requires that a party make "specific objections [] thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). "The mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." **Commonwealth v. Pressley**, 584 Pa. 624, 887 A.2d 220, 225 (2005).
>
> Here, we find no place in the record where [Appellant] preserved his request for a jury instruction on voluntary manslaughter. While [Appellant] included in his points for charge an instruction on voluntary manslaughter, and the trial court declined to give the instruction, defense counsel failed to object to the trial court's ruling. Instead, defense counsel indicated he accepted the trial court's ruling and failed to raise the issue again during the remainder of trial. As [Appellant] failed to properly preserve this issue, any claim of error regarding the voluntary manslaughter jury instruction is waived.

**Craig**, 2019 WL 2564144, at *2 (citations to record omitted).

Moreover, this Court found Appellant's remaining issues to be meritless and/or waived, and, accordingly, we affirmed his judgment of sentence. **See**

*id.* Appellant filed a timely petition for allowance of appeal, which our Supreme Court denied on December 3, 2019.

On or about November 6, 2020, Appellant filed a timely *pro se* PCRA petition at both trial court docket numbers. After multiple amendments and various counsel, on June 29, 2023, the PCRA court provided notice of its intent to dismiss Appellant's PCRA petitions without an evidentiary hearing. On September 25, 2023, the PCRA court denied Appellant's PCRA petitions. Appellant filed timely notices of appeal,[1] which this Court consolidated *sua sponte*, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following sole issue in his "Statement of Questions Involved" (verbatim):

> 1. Did the PCRA court err and was dismissal of Appellant's PCRA Petition not supported by the Record and free from legal error because trial counsel was ineffective for failing to properly argue and preserve the issue of the failure of the Court to fully charge the jury on voluntary manslaughter relating to imperfect self-defense and/or heat of passion and initial PCRA counsel was ineffective for failing to timely raise the issue?

Appellant's Brief at 4 (answer of court omitted).

_____

[1] We note Appellant filed two notices of appeal with each listing both trial court docket numbers. Each notice of appeal contained a handwritten offense tracking number next to only one of the two trial court docket numbers. We conclude Appellant has adequately complied with **Commonwealth v. Walker**, 646 Pa. 456, 185 A.3d 969 (2018). **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa.Super. 2020) (*en banc*) (holding "the fact that the notices contain [more than one] lower court number[ ] is of no consequence").

Initially, we note:

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa.Super. 2012) (quotation marks and quotations omitted).

As relevant here, a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). In reviewing Appellant's ineffective assistance of counsel claim, we are mindful that, since there is a presumption counsel provided effective representation, the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282 (2010).

To prevail on an ineffective assistance claim, a defendant must establish "(1) [the] underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and (3) but for counsel's ineffectiveness,

there is a reasonable probability that the outcome of the proceedings would have been different." ***Id.***, ***supra***, 10 A.3d at 291 (citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. [C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.

***Commonwealth v. Johnson***, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted). ***See Commonwealth v. Daniels***, 600 Pa. 1, 963 A.2d 409, 419 (2009) ("A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.") (citation omitted)). "A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa.Super. 2013) (*en banc*) (citation omitted).

Further,

> To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Spotz***, 624 Pa. 4, 84 A.3d 294, 311-12 (2014) (citations, quotation marks, and quotations omitted). ***See Commonwealth v. Gribble***, 580 Pa. 647, 863 A.2d 455, 472 (2004) ("[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have

reasonably had an adverse effect on the outcome of the proceedings.")
(quotation omitted)).

Here, Appellant specifically claims he was entitled to a jury instruction on voluntary manslaughter relating to imperfect self-defense and/or heat of passion, and trial counsel's failure to properly object to the trial court's failure to give the jury instruction constituted ineffective assistance. Appellant avers he was prejudiced by trial counsel's omission because "even if the jury did not accept Appellant's self-defense position, there was an ample basis for convicting on a lesser voluntary manslaughter charge rather than third-degree murder." Appellant's Brief at 8.

Accordingly, Appellant requests that we either remand to the PCRA court for an evidentiary hearing as to whether trial counsel had a reasonable basis for his omission or order a new trial in this matter. We conclude there is no arguable merit to Appellant's underlying claim, and, thus, trial counsel cannot be deemed ineffective.[2]

Under Pennsylvania law, a homicide defendant is entitled to a jury instruction on voluntary manslaughter only "where the offense has been made an issue in the case and where the evidence would reasonably support such a verdict." *Commonwealth v. Kim*, 888 A.2d 847, 852-53 (Pa.Super. 2005) (citation omitted).

_____

[2] As such, we need not determine whether Appellant was prejudiced by counsel's omission. *See Johnson*, *supra*.

Voluntary manslaughter is defined as follows:

**(a) General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

**(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable.

18 Pa.C.S.A. § 2503(a), (b) (bold in original).

In the case *sub judice*, Appellant asserts a "heat of passion" instruction was warranted under Subsection 2503(a)(1) and/or an "unreasonable belief killing justifiable" instruction was warranted under Subsection 2503(b).

With respect to a "heat of passion" voluntary manslaughter instruction under Subsection 2503(a)(1), our Supreme Court has relevantly held:

[A] voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. To support a verdict for voluntary manslaughter, the evidence would have had to demonstrate that, at the time of the killing, [a]ppellant acted under a sudden and intense passion resulting from serious provocation by the victim.

*Commonwealth v. Montalvo*, 604 Pa. 386, 986 A.2d 84, 100 (2009) (internal citations, quotation marks and emphasis omitted). If any of these be wanting—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

- 9 -

*Commonwealth v. Sanchez*, 623 Pa. 253, 82 A.3d 943, 979-80 (2013)

(quotation marks and quotations omitted).

> "Heat of passion" includes emotions such as anger, rage, sudden resentment or terror which renders the mind incapable of reason. An objective standard is applied to determine whether the provocation was sufficient to support the defense of "heat of passion" voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

*Commonwealth v. Miller*, 605 Pa. 1, 987 A.2d 638, 650 (2009) (citations

and most quotation marks omitted). *See Commonwealth v. Carter*, 502

Pa. 433, 466 A.2d 1328, 1323 (1983) (holding where evidence does not

support finding of manslaughter, trial court need not submit issue to jury).

In the case *sub judice*, as to a "heat of passion" charge, Appellant

suggests:

> The entire case stemmed from an initial domestic dispute over custody of a child. N.T., 6/10/16, at 123-139. When the issue was reinitiated in the evening, Appellant stated that [a man] got off his bike and verbally and physically threatened Appellant[,] and this was followed by [Gredic] approaching Appellant from a distance with a gun drawn.

Appellant's Brief at 17.

Initially, to the extent Appellant attempts to link his shooting of Gredic

to the earlier altercation involving Poindexter and Davis, which appears to

have been connected, in part, to Poindexter's desire to see his son, we note

there is no indication the individual killed, Gredic, was involved in this

altercation. *See* 18 Pa.C.S.A. § 2503(a) (indicating voluntary manslaughter

includes "if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation **by**: (1) the individual killed[.]") (emphasis added)).

In any event, Appellant admits the earlier domestic "issue" happened "eight or nine hours" before Appellant went to the park and eventually killed Gredic. N.T., 6/13/16, at 200. Accordingly, even by Appellant's own admission, he had sufficient time for cooling off between whatever relevant provocation might have existed from the earlier incident and the killing of Gredic. *See Commonwealth v. Thompson*, No. 2730 EDA 2023, 2024 WL 4512096 (Pa.Super. filed Oct. 17, 2024)[3] (unpublished memorandum) (where, after a failed dinner between the appellant and the victim, the appellant laid in wait for an hour and a half, there was sufficient cooling off period so as to not warrant a "heat of passion" voluntary manslaughter instruction).

Moreover, as it relates to what occurred in the park when Appellant shot Gredic, Appellant admits neither Davis nor Destouet were in the park. N.T., 6/13/16, at 201. However, Appellant told Poindexter to look around to see if "there are any more familiar faces that [he] see[s] so we can squash [any other problems]." *Id.* Appellant claims a man on a bike heard him and said,

_____

[3] Pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

"I hope you aren't talking about the other guy on the bike because there's guys on a bike." *Id.*

Appellant testified he walked over to the man on the bike, and the man told him to "back the fuck up," and he swung at Appellant. *Id.* at 202. Appellant indicated he threw up his fists to fight the man on the bike, but the man on the bike yelled, "Tader, Tader, they [are] trying to jump me." *Id.* Appellant claimed he then saw Gredic running toward him with a gun and, when Gredic was 20 to 25 feet from Appellant, he shot Gredic. *Id.* at 205.

We agree with the PCRA court that neither Appellant's testimony, nor any other testimony offered during trial, establishes evidence of Appellant acting under "a sudden and intense passion" resulting from serious provocation by Gredic when he shot him from 20 to 25 feet away. *See* 18 Pa.C.S.A. § 2503(a). Appellant testified he immediately "deployed his weapon" and fired four shots at Gredic, who, if he had a gun, did not get off any shots. N.T., 6/13/16, at 204-05. Appellant testified that, as he fired shots at Gredic, he reflected on the fact his family members were in the park, and as soon as he finished firing his shots, he ran. *Id.* at 209.

Based on Appellant's own admissions, we conclude a reasonable man, confronted with this series of events, would not become impassioned because of any provocation by the victim, Gredic, to the extent that his mind was incapable of cool reflection. *See Commonwealth v. Mason*, 634 Pa. 359, 130 A.3d 601, 627-28 (2015) (citation omitted). Thus, as it relates to

voluntary manslaughter "heat of passion," we conclude there is no evidence that would support such a verdict, and, therefore, such an instruction was not warranted. Accordingly, there is no arguable merit to Appellant's underlying ineffective assistance of counsel claim in this regard. ***See Ali***, ***supra***.

Turning to Appellant's claim that trial counsel was ineffective in failing to object to the trial court's failure to give an "unreasonable belief killing justifiable" voluntary manslaughter charge under Subsection 2503(b), our Supreme Court has relevantly held:

> "[U]nreasonable belief voluntary manslaughter," sometimes loosely referred to as "imperfect self-defense," ***Commonwealth v. Tilley***, 528 Pa. 125, 595 A.2d 575, 582 (1991) (citing 18 Pa.C.S.A. § 2503(b)), will only justify a voluntary manslaughter instruction in limited circumstances: where a defendant held "an unreasonable rather than a reasonable belief that deadly force was required to save [his or her] life," and "all other principles of justification under 18 Pa.C.S.A. § 505 [ ] have been met." ***Id.*** Generally, the use of deadly force is not justifiable "unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat[.]" 18 Pa.C.S.A. § 505(b)(2). Although a defendant has no burden to prove a claim of self-defense before such a defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." ***Commonwealth v. Sepulveda***, 618 Pa. 262, 55 A.3d 1108, 1124 n. 13 (2012). The evidentiary elements necessary to prevail on a justification defense are that the defendant (a) reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) was free from fault in provoking the difficulty which culminated in the slaying; and (c) did not violate any duty to retreat. ***Id.*** at 1124 (citing 18 Pa.C.S.A. § 505).

***Sanchez***, ***supra***, 82 A.3d 980.

In the case *sub judice*, Appellant's own testimony establishes that he was not entitled to an "imperfect self-defense" voluntary manslaughter instruction since he was not free from fault in provoking the difficulty which culminated in the slaying, and he violated a duty to retreat. ***See id.*** Specifically, Appellant admits he approached the guy on the bike and raised his fists to fight him, which in turn, according to Appellant's testimony, resulted in the guy calling out for Gredic to help him, and Gredic running towards Appellant with a gun. N.T., 6/13/16, at 202. Thus, Appellant was not free from fault in provoking the difficulties which culminated in the slaying of Gredic. ***See Sanchez***, ***supra***.

Also, Appellant admits he was in an open park, and instead of running, he held his ground and shot at Gredic when he was 20 to 25 feet away. N.T., 6/13/16, at 204-05. Thus, the evidence does not support the fact Appellant did not violate a duty to retreat. ***See Sanchez***, ***supra***.

Accordingly, as it relates to voluntary manslaughter "unreasonable belief killing justifiable" under Subsection 2503(b), there is no evidence that would support such a verdict, and, therefore, such an instruction was not warranted. ***See Sanchez***, ***supra***, 82 A.3d at 980 (indicating that, to reduce homicide to voluntary manslaughter pursuant to a claim of "imperfect self-defense," the defendant must have held an unreasonable belief that deadly force was required to save his life, and all principles of justification under 18 Pa.C.S.A. § 505 must be met). Consequently, there is no arguable merit to

Appellant's underlying claim of ineffective assistance of trial counsel. ***See Ali***, ***supra***.

For all of the aforementioned reasons, we conclude the PCRA court did not err or abuse its discretion in denying Appellant's claim of ineffective assistance of trial counsel.[4]  Thus, we affirm.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2024

---

[4] Appellant suggests his initial PCRA counsel, who was replaced by subsequent PCRA counsel, improperly informed the PCRA court that there was no arguable merit to Appellant's underlying claim. Thus, he avers PCRA counsel was ineffective in this regard.  Assuming, *arguendo*, Appellant's initial PCRA counsel so indicated, we note that, given we have found no arguable merit to the underlying claim, PCRA counsel cannot be ineffective in this regard.